McGregor v. Home Insurance Co. of Newark.

JOHN McGREGOR et al.

*v.*

THE HOME INSURANCE COMPANY OF NEWARK, NEW JERSEY.

1. Where preferred stock is issued under a contract or law containing no provision or direction as to what shall be the rights of the holders of it in the distribution of capital when the affairs of the company are wound up, such stock merely has a right to be preferred in the division of profits, and not in the distribution of capital.

2. The general corporation act of this state directs that in the distribution of capital the holders of preferred stock shall be first paid, before any distribution is made to the holders of the common stock; therefore preferred stock issued in this state, either under authority of law or under a contract of which the law forms a part, is entitled to preference in the distribution of capital.

3. Dividends on preferred stock can only be paid out of the profits; and this is so even when the stock is issued under a guaranty that a dividend of a certain sum shall be paid annually.

4. The rule of distribution presented by the corporation act must be observed, whether the affairs of a corporation are wound up by the court or the officers of the corporation.

5. A thing which is within the intention of the makers of a statute, is as much within the statute as if it were within its letter.

On application for injunction. Heard on bill, answer and order to show cause.

*Mr. Joseph Coult,* for motion.

*Mr. J. F. Fort,* contra.

THE VICE-CHANCELLOR.

This is an application for an injunction. The complainants are stockholders of the Home Insurance Company of Newark, a corporation which has ceased to do business, and is in process of being wound up by its officers. The particular grievance of which the complainants complain is the division or distribution which the officers propose to make of the assets which remain for division among the stockholders.

McGregor. *v.* Home Insurance Co. of Newark.

This corporation was organized in 1874, under a special charter granted in 1869. It was organized with a capital of $100,000, which was afterwards increased to $200,000. In January, 1878, it was found that its reserve fund, which it was required by law to keep intact, was impaired to the extent of nearly $30,000. To restore this fund, so as to avoid being compelled to go into liquidation, the officers of the corporation devised this plan: each stockholder should surrender one-fourth of his stock, thus reducing the capital from $200,000 to $150,000, and when this was done, to issue preferred stock for the stock retired. The complainants agreed to surrender, and did surrender, their stock, and accepted new certificates for three-fourths of the number of shares originally issued to them. They also signed an agreement, dated April 17th, 1878, authorizing the issue of $50,000 of preferred stock. By this agreement they stipulated that this stock should be subject to redemption, at par, in ten years from July 1st, 1878, and should also be entitled to a semi-annual dividend of four per cent., and also—to quote the words of the agreement—that "such stock, when issued, shall be legal and valid, the same as if made and issued pursuant to the charter or any law of this state." Pursuant to this agreement, the preferred stock authorized by it was afterwards taken and paid for, and two dividends paid on it. The answer, in response to an interrogatory put by the bill, avers that the subscribers to this stock took it upon a representation that it should be paid in full before any distribution was made to the common stock.

Note.—The case of *Kent* v. *Quicksilver Mining Co., 78 N. Y. 159,* on appeals from *S. C. 12 Hun 53,* and from *Hoyt* v. *Quicksilver Mining Co., 17 Hun 169,* fully discusses the question as to the power of corporate directors, or of a majority of the stockholders, to create and issue preferred stock, so as to bind the minority not assenting to, or acquiescing in, such act, and denies such *general* power, whether attempted to be exercised as a means of securing money borrowed for the use of the corporation or otherwise. *Folger, J.,* says, on page 181: "Citations are made to us for the converse of this; but they do not come up—sometimes in their facts, sometimes in their declarations—to the necessity of the proposition. Either it is where the capital is not limited, and it is new shares that may be issued with a preference, and where there is express power to borrow on bond and mortgage (*2 Redf. on R'ways, chap. 33 sec. 4 § 237; Harrison* v. *Mex. R. W., 12 Eng. Rep. 793*); or the amount of the capital has

McGregor v. Home Insurance Co. of Newark.

The corporation suspended business about the 1st of April, 1879, and on the 14th of that month its directors passed a resolution to dissolve and wind up. This action was sanctioned and approved by more than two-thirds in interest of all the stockholders, at a general meeting of the stockholders legally called and held May 21st, 1879. Since then, the directors have proceeded far enough in the work of winding up to find that, after the debts and liabilities are paid, it is not probable sufficient assets will be left to return to the holders of the preferred and common stock its full par value. They have already paid to the holders of the preferred stock the full par value of their shares, believing, as a matter of law, that they were entitled to such preference in the division of the capital of the corporation. An injunction is asked to restrain any further distribution until the relative rights of the two classes of stockholders shall have been determined. The bill seeks an injunction also on other grounds, but they seem to me to be so effectually overcome by the answer as to dispense with their consideration.

The question is one of contract. The rights of the complainants must be determined by the contract. They are not in position to dispute the validity of the issue of the preferred stock. It was issued with their sanction, and under their covenant and assurance that it should have the same validity as if issued pursuant to law. They must abide by their promise.

I think it must be admitted, according to the general current of authority, that preferred stock, in the absence of an express

not been reached, and such stock is issued therefrom (*Hazelhurst* v. *Savannah R. R.*, *43 Ga. 53; Lothan* v. *Tison, 54 Id. 139*); or there was legislative authority (*Davis* v. *Proprietors, 8 Metc. 321; Rutland R. R. Co.* v. *Thrall, 35 Vt. 545*); or a restriction to authorized capital, and there was unanimous consent of the stockholders (*Prouty* v. *U. S. and N. I. R. R., 1 Hun 663; 43 Ga. 53, supra*); or there was power to redeem, which was a transaction in the nature of a debt (*Westchester &c. R. R. Co.* v. *Jackson, 77 Pa. St. 321*); or the opinion was *obiter* (*Bates* v. *Androscoggin R. R. Co., 49 Maine 491*); or it was the case of a subscription for stock, with a condition for interest until the corporation was in operation (*Richardson* v. *Vt. and Mass. R. R. Co., 44 Vt. 613*); or it was an action on a subscription more favorable to defendant than to other subscribers, and it was held that defendant could not set up the lack of equality (*Evansville R. R. Co.* v. *Evansville, 15 Ind. 395*); or a solemn de-

stipulation or direction to the contrary, simply gives the holder a right of preference in the division of profits, and not in the distribution of capital. And even when it is issued under an agreement or guarantee that a dividend of a fixed sum shall be paid on it annually, such dividend can only be paid out of net earnings or profits; and if no profits are made, no dividend can be paid. *Lockhart* v. *Van Alstyne, 31 Mich. 76, 14 Am. L. R. (N. S.) 180; Taft* v. *Hartford, Providence and Fishkill R. R. Co., 8 R. I. 310, 5 Am. Rep. 575.* This question has been presented for the consideration of the courts only in a few instances, but the adjudications are harmonious and decisive. *In re London India Rubber Co., L. R. (5 Eq. Cas.) 519*, two-thirds of the stock issued was preferred. The articles of association provided that as soon as the holders of the preferred stock should have received out of the profits a sum amounting in the whole to the total capital which had been paid up on their shares, together with interest or dividend, at the rate of seven and one-half per cent. per annum, the preferred and common stock should be amalgamated, and the holders of each should thereafter participate equally in the profits, and all distinction between the shares should cease. It was further provided that until the amalgamation took place, the holders of the common stock should have no right to vote at any general meeting of the stockholders, except upon the question whether the capital of the company should be increased or not. In deciding how the surplus assets should be distributed among the stockholders, Vice-Chancellor Malins held that their rights

termination of this question was not necessary for the disposal of the case (*Williston* v. *U. S. and N. I. R. R. Co., 13 Allen 400*); or the issue was authorized by the articles of association (*In re A'D. St. Nav. and Col. Co., 20 L. R. (Eq.) 339*); or there was full knowledge on the part of all concerned (*Lockhart* v. *Van Alstyne, 31 Mich. 81*); or the power in the corporate body was conceded, and it was denied that it existed in the directors (*McLaughlin* v. *D. and M. R. R., 8 Id. 100*)."

See, further, *Stevens* v. *South Devon Co., 9 Hare 312; Henry* v. *Great Northern Co., 1 De G. & J. 606; Sturge* v. *Eastern Union Co., 6 De G. M. & G. 158; Coey* v. *Belfast R. R. Co., Ir. L. R. (2 Com. Law) 112; Dickinson* v. *C. and O. R. R., 7 W. Va. 390; Bryant* v. *Ohio College, 1 Cin. S. C. 67; Covington* v. *Covington Bridge Co., 10 Bush 69; King* v. *Ohio and Miss. R. R., 9 Reporter 431; Green's Brice's Ultra Vires (2d Am. ed.) 164.*—REP.

did not depend upon any abstract notions of justice, but must be determined by the contract into which they had entered; that their contract made no provision for a distribution of assets, in case it became necessary to wind up the corporation, but simply regulated their rights in the corporation as a going concern, and that the only distinction it made between the two classes of shareholders was that it gave the preferred stock a preference in the division of profits. His conclusion is thus expressed :

"I wish it understood that I decide the case upon this principle : that where there is a provision for a preferential dividend, but no provision for the division of capital upon the breaking up of the concern, any surplus must be distributed amongst the shareholders according to their capital, without reference to their rights in respect of dividend."

The present master of the rolls, Sir George Jessel, in deciding the same question, likened the relation between the two classes of stockholders to the relation existing between copartners. He said :

"If, in an ordinary commercial partnership, one or more of the partners has a larger share of the profits than is the proportion borne by his share of the capital to the capital of the others, * * * that privilege ceases when the partnership is dissolved. * * * When the partnership comes to an end, the right to the share of the profits comes to an end also; and you distribute the assets, after providing for the profits earned up to the time of dissolution, in proportion to the partners' shares of the partnership capital."

He held that the same rule should be adopted in distributing the surplus assets of a defunct corporation. Aside from the right of preference in the division of the profits, he held that the position of all the shareholders is exactly the same. He added :

"The result, therefore, is that when a dissolution arrives, and no more profits are earned, all the shareholders stand in exactly the same position, and are entitled to the capital *pro rata.*" *Griffith* v. *Paget, L. R. (6 Ch. Div.) 511.*

The same views were expressed by Malins, V. C., *In re Bangor and Portmadoc Slate and Slab Co., L. R. (20 Eq. Cas.) 59.*

There, however, the preferred shareholders were held to be entitled to be first paid, because that course of distribution was clearly directed by the articles of association.

These authorities establish the doctrine that the rights of the two classes of stockholders, in such cases, must be determined by their contract, and that unless that gives a preference in the distribution of capital, the surplus assets must be distributed equally among all the stock. What, then, are the rights of the parties under this contract? The contract contains no express direction upon the subject. It simply provides for the issuing of preferred stock, and that such stock, when issued, shall be legal and valid, the same as if issued pursuant to law. It puts the stock on the footing of preferred stock issued by authority of law, and makes the law a part of their arrangement. What, then, are the rights, in this respect, of holders of preferred stock issued by authority of the law of this state? The main purpose to be accomplished in construing a contract is to give effect to the intention of the parties—to give effect to what both understood, or should have understood. It is to be presumed always that the parties have made their contract with reference to the *lex loci ;* and if they have used terms or phrases having a settled meaning in the local law, it must also be presumed that they used them in their legal signification. It is, therefore, always the duty of the court, in expounding a contract, to consider the law prevailing at the place where the contract was made. Here the parties have made the law a part of their contract.

Prior to the time when this contract was made, our legislature had declared and defined what should be the rights of a preferred stockholder in the distribution of the capital of a defunct corporation. The eightieth section of the general corporation act, in directing how the surplus assets of a corporation, wound up under that act, shall be distributed by this court, declares that " the surplus funds, if any, after payment of creditors, and costs and expenses, *and the preferred stockholders,* may be divided and paid to the general stockholders proportionally, according to their respective shares." *Rev. 191.* This I regard as a legislative declaration of what are the rights of the holders of pre-

ferred stock, when the law or contract under which the stock is issued does not in any way limit or restrict them. So, I infer, it is understood by the court of errors and appeals. *Mayer* v. *Attorney-General, 5 Stew. Eq. 815.* It is quite obvious, I think, from the remarks of Vice-Chancellor Malins, *In re London India Rubber Co., L. R. (5 Eq. Cas.) 519,* that had 'the English statute contained a similar direction, he would have felt himself bound by it, and would have been compelled to pronounce a judgment the exact opposite of that which he did pronounce. The officers of the corporation unquestionably understood the contract in accordance with its legislative interpretation, for they say that in procuring subscriptions to this stock, they represented that it should be paid in full, before anything was distributed to the common stock.

In view of this statute, I think it must be adjudged that, by the proper construction of the contract under consideration, the holders of the preferred stock of this corporation are, in the distribution of capital, to be first paid. The court has nothing to do with the wisdom or policy of this statute. It is possible, if the legislature had had the aid of the arguments made upon this question by Vice-Chancellor Malins and Sir George Jessel, a different mode of distribution would have been prescribed ; but it is their province to make the law, and the court must restrict itself to the duty of expounding and enforcing it.

The fact that this corporation is being wound up by its officers, and not under the direction of this court, does not alter the rights of the parties nor change the method of distribution. The primary object of the statute, so far as it affects stockholders, was to define their rights ; and the rule it prescribes upon that subject must be taken as the measure of their rights, whether they are wrought out by the court or through some other instrumentality. A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter. *4 Bac. Abr. 648 (Stat. I. ¶ 42); Oates* v. *National Bank, 100 U. S. 239.*

The complainants are not entitled to an injunction, and the order to show cause must therefore be dismissed, with costs.