Bankers Securities, Incorporated (which will be called the defendant, because for the purpose of this decision none of the individual defendants need be noticed), was incorporated in 1922 for the purpose of acquiring and investing in securities of various kinds. Its main business consisted of securing shares of capital stock of several banking institutions in Bergen county. The complainant, Meyerhoff, who originally filed this bill, is the holder of thirteen shares of the stock of the defendant and he has since been joined as a complainant by one Harry Schall, who is the owner of ten shares out of a total issue of one thousand five hundred and forty shares. *Page 77 
On the 18th of February, 1929, a special meeting of the stockholders was held at which there was adopted a resolution wherein it was recited that the legislature had enacted a statute which made it unlawful for the defendant to acquire any more capital stock of the above-mentioned banking corporations and that it was deemed advisable to dispose of all of the assets in the manner hereinafter referred to. Therefore, it was resolved that the board of directors were authorized to sell and convey all the assets of the corporation, real and personal, to such persons and at such prices as in the judgment of the board should seem proper, "providing only that the total amount received from the sale of the assets so authorized shall be not less than the sum of $184,800," and that immediately thereafter the directors should distribute the proceeds of sale pro rata and "retire said shares for a sum not less than $120 per share, and leaving only sufficient moneys in the corporation, if necessary, to provide for the voluntary dissolution of Bankers Securities, Incorporated."
The bill and the supporting affidavit allege that the plan intended to be followed is to transfer all the assets of the defendant to the City National Bank of Hackensack in consideration of the payment of $200,000. All but five of the stockholders of the defendant are also stockholders of the City National Bank and are to be given an opportunity to subscribe to the issue of capital stock of a corporation to be formed and to be called City National Company, Incorporated, in order to comply with the exception to chapter 273 of the laws of 1928. The obvious purpose of organizing this last-named company is to engage in the business now being conducted by the defendant. Clearly, the other five shareholders will not be eligible under this plan to secure any of the stock of City National Company, Incorporated. These allegations are not denied.
The bill also alleges that the complainant, Meyerhoff, received no notice of the special meeting at which the above-mentioned resolution was adopted. This charge is directly met and denied by the answering affidavits and must await *Page 78 
final hearing. Citizens Coach Co. v. Camden Horse RailroadCo., 29 N.J. Eq. 299.
It is also charged in the bill that the shares of stock of the defendant are worth very much more than $120, and that in consequence there will be great discrimination against the complainants and in favor of these shareholders who are likewise stockholders in the bank. The proofs upon this point are rather indefinite and are more than met by the denials on the part of the defendant. This also will have to await final hearing.
The main point dealt with upon the argument of the order to show cause was as to the legal authority of the stockholders to adopt the resolution of February 18th. This argument falls under two heads — (a) the right of the stockholders to strip the corporation of all its assets so as to destroy its power to continue its prosperous business, and (b) the right to evade the provisions of section 31 of the General Corporation act and effect a virtual dissolution, at least so far as the complainants are concerned.
It seems to me that the attempt to practically dissolve this defendant corporation cannot be allowed to continue. I realize that the conveyance and transfer of all the assets of the company does not technically amount to a dissolution of the charter, as was said by Vice-Chancellor Green in Sewell v. East Cape, c.,Co., 50 N.J. Eq. 717. But a moment's reflection is necessary, however, to perceive that to all practical intents and purposes such will be the effect so far as these complainants are concerned. The principles upon which it seems to me this question must be determined were elaborately discussed in the leading case of Kean v. Johnson, 9 N.J. Eq. 401. The facts in this case are so well known and reference to it has been made by this court and the court of errors and appeals so frequently that it would be a waste of time to repeat them here. The master by whom that opinion was written has so clearly and fully discussed the rules involved, and so elaborately illustrated them by decisions of the greatest weight, that it would be beyond my power to more clearly set them forth. It is but necessary to *Page 79 
reproduce the first two paragraphs of the head notes which read as follows:
1. When a board of directors, or a majority of stockholders, deviate from the originally contemplated undertaking, the "rights" of other and dissenting stockholders are "affected;" as against them they cannot legally do it.
2. A majority of stockholders in a prosperous corporation cannot, at their own mere caprice, sell out the whole source of their emoluments and invest their capital in other enterprises, where the minority desire the prosecution of the business in which they had engaged. The contract is that their joint funds shall, under the care of specified persons, generally called directors, be employed, and that for certain specified purposes.
The opinion then proceeds to minutely examine and describe the relationship and the rights and obligations of the incorporatorsinter sese and to show the actual harm that would befall the minority stockholders in their investment in the capital stock of a prosperous corporation, if they were obliged, in invitum, to relinquish their holdings in return for even the fair cash value thereof, which would, of course, be of less value as compared to the holdings, unless that cash could be reinvested to substantially equal advantage. Not only does the defendant admit its prosperity but it is stressed in the affidavits filed in its behalf.
The case to which reference has just been made involves the construction of certain provisions of a statute, but the reasoning of the opinion was absolutely essential to determine the meaning of the language of the act there under consideration. In that case, it will be recalled, the act authorized one railroad company to purchase the road constructed by a separate, smaller railroad company. The complainant's bill was filed to enjoin the consummation of the purchase, to have it canceled, and to prevent the issue of any bonds or the execution of any mortgage. It is necessary to state this because the argument advanced in the interest of the defendant is that there will be no change in the nature of the business in which the proposed new company will engage. Although the first of the above-quoted head notes speaks of a deviation "from the originally contemplated undertaking," it will be *Page 80 
observed that the master was dealing with a situation where that complainant's capital would continue to be invested in a company engaged in exactly the same kind of an enterprise for which he originally intended it to be used, a railroad, but on a larger scale and to greater advantage, in the opinion of an overwhelming majority of his fellow stockholders. If in those circumstances he was entitled to have his property rights respected, how much stronger is the appeal of the complainants in the case at bar? Here, there will be something perhaps even more disastrous to the rights of the complainants because the purpose for which their money was secured for the common enterprise is to be totally abandoned.
It is true that it is intended to return to them the present value of their respective shares, as I shall have to assume, at least until the final hearing, but, as already said, that rendering back of their money will put them in a less advantageous position than they now occupy. They now hold the equivalent of that cash and, in addition, their respective investments which are valuable property rights. So valuable are these rights that the very eminent counsel for the complainant inKean v. Johnson, supra, argued that if it was the intention of the legislature to divest him of his rights it would be in conflict with the constitution. This point the master did not discuss or decide because the other point decided made it unnecessary.
Counsel for the defendant bases his argument in favor of the legality of the transaction now under consideration upon the policy of our law which confides to the board of directors of each corporation, unless otherwise specifically provided, the discretionary power to regulate and determine the ordinary corporate activities and which places in the hands of a majority of the stockholders all extraordinary corporate engagements. From this it is argued that even the extraordinary transaction of disposing of all the assets of the company was within the power of a majority in interest of the stockholders. In support of this position several decisions are cited, of which the following are examples: Sewell v. East Cape, c., Co., supra, was a case where the corporation *Page 81 
was threatened with a foreclosure of a mortgage encumbering all the property it possessed, which was depreciating in value, and its debts were large and all attached to the entire property. It will have been remarked that in Kean v. Johnson, supra, the head note discloses that the opinion in that case referred to the affairs of a "prosperous" entity such as the defendant in the case at bar, and, therefore, a very different rule was enforced by Vice-Chancellor Green in a case where immediate action was probably necessary to save every stockholder from the swift destruction of the entire value of all his shares. Throughout the body of equity jurisprudence there runs a rule which is never relaxed, and that is that all our principles and doctrines are to be applied in view of the circumstances of each particular case. The principle upon which the Kean Case is based, by the very terms of the language already quoted, applies only in the case of a prosperous corporation or partnership. The East Cape May BeachCompany Case does not in any way conflict, but is most readily distinguishable. In all the cases on this subject the deciding feature is the prosperity or lack thereof in the corporation. It would be the height of folly to compel the directors and stockholders of a company faced with utter destruction to sit idly by and see all its assets swept away without any effort to avoid the ruin. It was not only within the power of the directors, in the East Cape May Company Case, to act as they did, but it was their duty. If this defendant corporation's affairs had fallen into such a perilous state, then the resolution under the attack might be sustainable. It was said upon the argument that the passage of the act of 1928, and another circumstance, rendered it advisable to proceed to incorporate another company with a different name. Perhaps it was more beneficial to the stockholders who are also stockholders of the City National Bank of Hackensack, but it was not beneficial to the complainant to deprive them of their holding in this corporation which had not only prospered, but, it is fair to assume, would continue to prosper.
Another case similar to the one just considered was Freeman
v. Sea View Hotel Co., 57 N.J. Eq. 68. There, the *Page 82 
defendant company was organized, as its name indicates, to carry on a hotel business and the directors decided to sell the hotel property then operated and invest the proceeds of the sale in another hotel at a place where it was thought the business of the company would be more profitably carried on. Here, there was no attempt to strip the corporation of every asset with which it could conduct its business. The purchase price of the hotel, which nobody denied was adequate, was to be immediately devoted to carrying on the very business for which the company was organized, and not, as in the case at bar, distributed among the holders of the stock. If the directors of the defendant in the case at bar had determined to sell every security which it holds for the purpose of reinvesting the proceeds in other securities which they thought to be superior in value and income, then a majority of the directors would certainly bind every member of the corporation, and we would have the exact situation presented in the case of the Sea View Hotel Company. It would be a continuance of the exact kind of activity for which the corporation was formed, by the very same company.
I must confess that I am unable to see any parallel between the case to be decided and Ellerman v. Chicago, c., Co., 49 N.J. Eq. 217.
There, a complicated contract was entered into by the defendant with a number of other parties in an effort to bring about a settlement of troublesome claims and litigation which involved the conveyance of valuable property of the company for a large sum of money. But there was no attempt made to discontinue the defendant's ability to carry on any business at all. Of course, in these circumstances the judgment of the directors, in the absence of fraud, mismanagement, c., would be unimpeachable.
Neither do I consider United States Steel Corp. v. Hodge,64 N.J. Eq. 807, apposite. In that case litigation grew out of an expressed intention of the corporation, adopted at a stockholders' meeting, to retire certain shares of preferred stock by use of the proceeds of the sale of bonds, which would have relieved the corporation of the payment of dividends of a larger rate than the interest on the bonds. The power of *Page 83 
the corporation so to do had already been approved in Berger v.United States Steel Corp., 63 N.J. Eq. 809. In the Hodge Case
it developed that one of the directors of the corporation, the late J. Pierpont Morgan, was also a member of a syndicate that was to profit by the underwriting of the proposed bonds. The decision in that case did not involve the point under discussion but only the equitable rules applicable when a director undertakes to deal with his own corporation and certain constructions of a by-law and a statute which does not bear the remotest resemblance to anything which is now presented here.
The case of Farmers Loan and Trust Co. v. Hewitt, 94 N.J. Eq. 65,
is of no value or assistance in the resolution of the question presented here. The only pertinent portion of Vice-Chancellor Backes' opinion is that which deals with the authority of the directors to determine how the corporation should raise additional capital so that its business could be more safely and profitably conducted. The vice-chancellor did not deal with an attempt by the directors and majority stockholders to strip the corporation of every asset it had; on the contrary, it was to expand its resources. In the case sub judice a very different situation would be presented if the directors had decided upon an issue of bonds or other increase of capital to expand the defendant's business. That would be a pure question of economic policy and the complainant would have no standing to object thereto. That would be a parallel case to the HewittCase.
In his reply brief counsel for the defendant reiterates his dependence upon the applicability of the rationale of the HodgeCase, and he repeats the quotation in his main brief from the language to be found at page 812 of the opinion of the court of errors and appeals, where it is said that in that case there was an entire absence of any taint of fraud or attempt to conceal, and where it is further said that the proceeding by the steel company was entirely fair, as was shown by the failure of any stockholder who attended the meeting of the corporation to attack it. This has nothing to do with the question presented by the motion now to be decided. The *Page 84 
question under consideration is, whether or not it is within the power of a majority of the stockholders to so dispose of all the assets of the company that it will be impossible for it to continue the business for which it was designed and for the conduct of which the stockholders invested their property, when any of such stockholders object. While this bill alleges fraud, that subject is not the one now being considered. It makes no difference on this question whether there was any fraud or the best of faith and the greatest of wisdom exercised by the directors and stockholders. If a corporation cannot lawfully do a thing, it makes no difference how honestly its officers may attempt to accomplish it. I do not mean to be understood to charge the directors with bad faith. They probably considered their solution of the defendant's difficulty the best and fairest that could be devised. I only say it is my opinion that it cannot legally be so done.
The point is stressed that the desire of an overwhelming majority of the stockholders favors the proposed plan of liquidation of the defendant. That is of no moment. It is true that where an attack is made by minority stockholders on a proposal to effectuate some corporate purpose within the power of the corporation, due weight will be given to the fact that an insignificant number of stockholders in interest oppose it. But, as I said in Grausman v. Porto-Rican American Tobacco Co.,95 N.J. Eq. 155, the holder of a single share has a standing to prevent an attempted ultra vires act. And see Chicago CityRailway v. Allerton, 18 Wall. 233.
It may seem apparent to the large majority of the stockholders of the defendant corporation that a minority, which must appear insignificant to them, should not be permitted to obstruct their desire to put that corporation to death and cause it to devise and bequeath all of its assets to another company so there will be a wider field of operations. There is much to be said for our custom of majority rule, but it should not permit a ruthless or thoughtless majority to ride rough-shod over the property rights of even a single individual. To the man of business, engrossed in the success *Page 85 
of his own affairs, it is, no doubt, exasperating, but to a court of equity it is equally as abhorrent as if a minority should attempt the same injury to the majority. If such a majority desires to establish a new corporation so as to engage in a larger field of activity, they may, of course, do so and exclude the members of the minority from any participation therein, but they cannot by an illegal method accomplish their purpose to the disadvantage of the minority stockholders. Not only would the permission of such conduct injuriously affect these minority members but it would seriously shake the confidence of the public in stock investments.
It may be that these stockholders should suffer no interference because there lies before them another method whereby the desired result may be attained by recourse to the thirty-first section of the General Corporation act, in analogy to what I allowed inGrausman v. Porto-Rican American Tobacco Co., supra. The difficulty with this solution, however, is, as already said, that the proposed method of dissolution is without legal warrant. If the defendant shall be dissolved in the method prescribed by the act, then, of course, section 31 thereof being a part of the charter of the corporation was also a part of the contract into which the incorporators entered and the complainants will be charged with knowledge of the fact that such action might be taken at any time after the organization of the company, within the absolute discretion of the statutory majority, and should not be heard to complain. But to permit the present method to be pursued would destroy the rights of the incorporators as they were agreed upon when the company was formed, in the manner pointed out in Allen v. Francisco Sugar Co., 92 N.J. Eq. 391;affirmed, Ibid. 431.
The determination to which I have come on the first subdivision of the inquiry as to the legality or illegality of the resolution of February 18th renders it unnecessary to consider or to decide the second subdivision.
Among the prayers for relief is one that the defendant may be decreed to be insolvent and another that a receiver, or receivers, may be appointed. These prayers should not be *Page 86 
granted. The theory advanced is that the corporation has suspended its ordinary business in the effort to dispose of all of its assets. The statute requires, in addition to the suspension of its ordinary business, that it must be shown the suspension was for want of funds to carry on the same, and there is, of course, no such showing in this case.
I will advise an order enjoining the defendant and its officers and directors from proceeding any further under the resolution of February 18th until the further order of the court. All other issues presented will be held until final hearing. *Page 87