The deprivation of the life of a corporation is a serious and critical adjudication rendered only upon imposing and persuasive proof. Vice-Chancellor Van Fleet acknowledged: "The power is a strong one." Atlantic Trust Co. v. Consolidated ElectricStorage Co., 49 N.J. Eq. 402; 23 Atl. Rep. 934. Should the defendant be at once enjoined from exercising its corporate franchises and a receiver appointed pursuant to the statute to liquidate and distribute its assets? R.S. 14:14-3.4; N.J.S.A.14:14-3.4. If not, should a receiver be empowered to assume custody of the property of the defendant within the state? Vide,Pierce v. Old Dominion, c., Smelting Co., 67 N.J. Eq. 399,402; 58 Atl. Rep. 319; Long v. F.R. Long Co., 82 N.J. Eq. 544;89 Atl. Rep. 246; Hinchliffe v. National Dyeing, c., Co.,126 N.J. Eq. 386; 8 Atl. Rep. 2d 710, relative to the propriety of introducing these inconsistent questions by a single bill. However, those are the problems projected for solution by the pleadings and affidavits filed in the present cause.
The defendant attained its corporate organization under the laws of the State of New York, and about thirty-six years ago it acquired authority to pursue its business in this state. Its authorized capital structure comprises 4,000 shares of prior preference 6% cumulative preferred stock, all of which is held by the complainant, and 15,000 shares of common stock of no par value, of which approximately 12,786 shares have been issued and are now outstanding. The principal business of the company has been the manufacture of architectural terra cotta for the embellishment of the interior and exterior of buildings. Its major operations have been conducted at a manufactory advantageously located in the industrial area of Perth Amboy. Additionally, the company owns accessory properties at Rocky Hill, New Jersey, and at Tottenville, Staten Island, New York. The real estate, structures, machinery and equipment were estimated by the defendant on December 31st, 1942, to be of the value of $1,785,357.50. Augmented by the items of cash, investments, *Page 362 
inventories, accounts receivable and deferred charges, the gross book assets total $1,983,896.71. The value attributed to the Staten Island property is probably excessive, but nevertheless it is evident that the assets of the company are considerable. Against these assets are reserves for depreciation of the physical property of $497,087.42, for accounts receivable, $7,549.25, and for depletion of clay lands, $24,397.75.
The liabilities of the company amount to $136,464.17. There are no bills payable. Hence, the defendant represents that its net book assets reckon up to $1,318,398.12. Other than the value referable to the Staten Island plant, the estimates and appraisements of the assets and liabilities are not significantly impugned. It is observed that of the reserves for depreciation, the sum of $200,000 is accommodated to the book value of the Staten Island property, and should the stated value of this asset be still more substantially reduced, there remains an abundant excess of resources above liabilities.
To warrant the appointment of a receiver under the authority of the statute, the complainant must adequately establish (a) that the corporation has become insolvent and is not about to resume its business in a short time, or (b) that its business has been and is being conducted "at a great loss and greatly prejudicial to the interest of its creditors or stockholders," (c) so that its business cannot be conducted in the future with safety to the public and advantage to the stockholders. R.S. 14:14-3; N.J.S.A.14:14-3; Laredef Corp. v. Federal Seaboard Terra Cotta Corp.,131 N.J. Eq. 368; 25 Atl. Rep. 2d 433. The proof of the essential jurisdictional fact must be clear and convincing because it is from the existence of such fact that the court derives its statutory power.
If it is inferred that the values ascribed to the assets of the company are inflated by the effusion of some measure of exaggeration, even so it is not evident that the company is insolvent. Indeed, the mere circumstance that the liabilities of a corporation exceed its assets does not of itself necessarily denote its insolvency within the particular intendment and *Page 363 
signification of the statute. Hersh v. Levinson Bros., Inc.,117 N.J. Eq. 131, 136; 174 Atl. Rep. 736; Whitfield v. Kern,122 N.J. Eq. 332; 192 Atl. Rep. 48. Insolvency, in the statutory sense, imports a general inability to meet liabilities as they mature, by means of either available assets or an honest use of credit. Empire State Trust Co. v. Trustees of William F.Fisher Co., 67 N.J. Eq. 602; 60 Atl. Rep. 940.
There are no unsatisfied judgments against the defendant. It has contracted no existing bank loans. Its president deposes that the company has for many years had the capacity to borrow from $50,000 to $100,000 on its own credit. A fiscal competency relatively fortunate in recent years. No dividends heretofore declared remain unpaid. The proofs neither substantiate a present actual insolvency, nor disclose that the cessation of the ordinary business of the corporation was the consequence of "a want of funds." Meyerhoff v. Bankers Securities, Inc.,105 N.J. Eq. 76, 86; 147 Atl. Rep. 105.
The complainant prosecutes this cause as a stockholder and not as a creditor of the company. Until a dividend is declared the entire assets of the corporation, including surplus or accumulated profits, belong to the corporation and the corporation owes no debt in respect thereto to the stockholders as individuals. Stevens v. United States Steel Corp., 68 N.J. Eq. 373; 59 Atl. Rep. 905. Of course, if the defendant were in fact insolvent, excluding the claim of the complainant from the calculation of its liabilities, then it would be a matter of little or no importance whether the complainant is a creditor or a stockholder. Atlantic Trust Co. v. Consolidated ElectricStorage Co., supra.
The defendant has pursued its enterprise during a lengthy span of years. In 1938 and until the recent suspension of manufacturing operations, losses of approximately $110,000 have been sustained. Manifestly, the business has been lately conducted at a loss, but not at a "great loss" except in the year 1940. It is not intimated that these losses were occasioned by the improbity, infidelity or dereliction of the officers *Page 364 
and directors. Profits and losses are not uncommon characteristics of a business cycle. In the experience of numerous well established business corporations, there have been periods of alarming adversity against which their managers struggled, attaining an ultimate triumph. And so, the need of judicial intervention must be manifest.
The major pressure of the complainant's argument is applied to the circumstance that on March 20th, 1942, the defendant filed in the federal court a petition for reorganization under the provisions of the Chandler Act. At that time a former employee of the company, alleging that he had contracted silicosis in his employment, had obtained a judgment of $60,000 against the company. Moreover, the federal revenue department was demanding from the company additional income taxes for the years 1936 and 1937 amounting to $22,874.20. True, the company then represented by its petition that its financial condition entitled it to invoke the provisions of the federal act. Singularly, it is observed that the complainant filed an answer in that proceeding in which it averred "that the assets of the debtor corporation are sufficient to satisfy in full the claims of its lien holders, general creditors and this stockholder which is entitled to preference in distribution * * *." The complainant declared that the petition was not filed in good faith. Possibly it was a stratagem. The prayer of the petition was denied; the judgment and the tax claim were compromised and settled.
The prosecution of the present war, with the consequent circumscribed use of building materials for unessential structures, has undoubtedly banished temporarily the customary business of many industrial concerns. Some have the financial sturdiness to survive, others must succumb. In such an emergency, conversion, retrenchment or dissolution are the expedients. The choice should emanate from the exercise of business judgment. Convictions, chiefly based upon prognostications, are likely to be divergent and adverse. It is the habit of events to disprove conjectures.
The conflict in this cause resembles that with which I was concerned in the Laredef Case, supra. Broadly stated, *Page 365 
it exemplifies an oppugnancy between hope and despair. Hope inspires preservation, whereas despair motivates the disintegration and hasty salvage of the organized acquisitions of the past before it is too late.
The officers and directors of the defendant are apparently convinced that the company can await a profitable resumption of its business following the termination of the war, and they have determined that retrenchment is a perspicacious policy. Accordingly, they have discontinued all manufacturing operations, reduced salaries, and have let a large portion of the Perth Amboy property to tenants at an aggregate annual rental of $32,000. Additional income is forthcoming from Atlanta Terra Cotta Company, a Georgia corporation, owned by the defendant and now gainfully engaged in fabricating airplane parts. It is asserted that this income and other revenues will be more than sufficient to counterpoise all maintenance and carrying charges of the defendant. The complainant does not indulge this optimism. It catches an inauspicious prevision of the future of the company. The complainant expresses apprehension that the products of the defendant will be then outmoded and superseded by new-fashioned ornamental products. Certainly, it is not the function of the court to predict the eventual architectonic tendencies. The attempt to envision such eventualities should be entrusted to the chosen officers and directors of the company so long as they act conscientiously and exercise reasonable prudence, caution and sagacity.
In a judicial consideration of the present controversy, certain settled rules must be recognized. The object of the statute is to protect the public at large from imposition and to promote and secure the general interest of all stockholders and creditors.Kelly v. Kelly-Springfield Tire Co., 106 N.J. Eq. 545;152 Atl. Rep. 166. Here, complainant alone seeks the dissolution of the company.
Questions of business policy and purely economic problems are to be determined by the directors of the corporation and not by the court. Smith v. Banister, 127 N.J. Eq. 385, 388;13 Atl. Rep. 2d 485; Madsen v. Burns Brothers, 108 *Page 366 N.J. Eq. 275, 279; 155 Atl. Rep. 28; Hamilton v. UnitedLaundries Corp., 111 N.J. Eq. 78; 161 Atl. Rep. 347.
A statutory receiver cannot be discreetly appointed unless the statutory prerequisites are clearly sustained by the proofs.
Just a century ago, a Chancellor of this court stated: "If it be a balancing question, and the course of those who manage its [the corporation's] affairs appears to be upright and just, the doubt should be resolved in favor of the rights of the company. It would be unwise, and against public policy, to seek an occasion for interference with any corporation, so long as they are striving against adversity with an honest purpose, unless their case is hopeless, or their course of action so unfair as to jeopardize the interests of creditors and the public." Brundred
v. Paterson Machine Co., 4 N.J. Eq. 294, 305.
As recently as a decade ago, the Court of Errors and Appeals declared that the early precedents continue to exhibit the directive patterns of consideration and action to be pursued in these causes. Tachna v. Pressed Steel Car Co., 112 N.J. Eq. 411,416; 164 Atl. Rep. 413.
The defendant is not so financially infirm that it cannot meet its pecuniary obligations. Its present policy can be temporarily pursued, certainly without inordinate loss to its stockholders, and without endangering the public interests or those of its creditors. The resources of the nation are at present being dedicated to the victorious prosecution of the war. Labor is absorbed. Business and trades are restricted. Pondering all the relevant facts, it is concluded that the extraordinary statutory relief sought by the complainant in the circumstances of this cause cannot be justifiably conferred. There is no reason to appoint a custodial receiver.
A decree will be advised dismissing the bill and the order to show cause. *Page 367