The bill of complaint is filed by the City of Newark alleging that there is due the city for taxes on personal property of Jos. Hollander, Inc., a corporation, a total of $10,678 for the years 1935, 1936 and 1937, together with interest and penalties. The company was engaged in the business of fur dressing and dyeing at numbers 1-29 Paris Street and 143 East Kinney Street.
The assessment for the years 1935 and 1936 were, on appeal, sustained by the Essex Board of Taxation and the State Board of Tax Appeals. No appeal was taken from the assessment for the year 1937.
On August 4th, 1937, the New Jersey Supreme Court allowed a rule to show cause why writ of certiorari should not issue to review the judgments of affirmance of the State Board of Tax Appeals as to the assessments for the years 1935 and 1936 and also to review the assessments for 1937. This proceeding was on September 11th, 1941, discontinued by consent *Page 541 
of the parties. November 16th, 1936, the Jos. Hollander, Inc., was dissolved, but the certificate of such dissolution was not filed until May 1st, 1939.
No distress or tax warrant as provided by statute was ever issued or levy made for the collection of the aforesaid personal taxes by the City of Newark upon property of Jos. Hollander, Inc., prior to its dissolution or thereafter at any time prior to the institution of this suit.
Following the dissolution of the corporation, the assets remaining after the payment of the company's debts including cash, were distributed among the stockholders, and on December 26th, 1936, these distributees entered into agreement with A. Hollander Son, Inc., to sell to it the machinery, equipment, goods and chattels and personal property theretofore belonging to the dissolved corporation for $27,500 and to lease the lands and factory premises to be used by the corporation for a term of nine years, at an annual rental of $15,000, together with the exclusive right to use certain formulae, recipes, processes and methods for dressing and dyeing furs and skins theretofore used by the corporation for a like term of years in consideration of the payment of an annual royalty of $7,500 for the first eight years and $7,000 for the last year. The vendors represented that they were the sole and absolute owners of the property, tangible and intangible. The vendee reserved the right to assign the agreement to a corporation to be formed.
The vendees organized the Perfection Fur Dressing and Dyeing Co., Inc., and on January 2d 1937, the agreement was consummated by a bill of sale from the stockholders-distributees to the Perfection of all personal property, a lease for the realty, and a grant of exclusive license for the use of formulae and processes, in accordance with the terms and agreement between the stockholders-distributees and the Perfection Fur Dressing and Dyeing Co., Inc. The latter was a wholly owned subsidiary of A. Hollander Son, Inc., and upon the dissolution of Perfection on April 2d 1938, A. Hollander Son, Inc., succeeded to all its assets and assumed all its liabilities. Some of the machinery and equipment conveyed was removed from the state and the remainder junked, *Page 542 
as of no value. None of it is available for the liquidation of the taxes.
The distribution of the assets of the Jos. Hollander, Inc., without payment of the taxes due and owing to the City of Newark, as aforesaid, the bill charges was unlawful and a fraud upon creditors and a willful deprivation to the City of Newark of the taxes due and owing; that it believes that there is due and liable to become due under the aforesaid agreements between the stockholders-distributees and Perfection, dissolved, A. Hollander Son, Inc., as successor thereto, the sum of $42,000, subject to payments advanced in the amount of $25,000 and that said sum or a part thereof was due and payable on January 2d 1944. Complainant charges that the corporation in dissolution, has equitable interests and things in action which should be applied to the payment of the taxes due the City of Newark; that the aforesaid stockholders are presently in ownership of the premises 233-237 Wilson Avenue, in Newark, which was distributed to them as a part of the assets of Jos. Hollander, Inc.
The bill further alleges that during the May, 1943, term of the New Jersey Supreme Court it made application, on rule to show cause why a peremptory or alternative writ of mandamus should not issue, directing Jos. Hollander, Inc., its trustees in dissolution and stockholders, and A. Hollander Son, Inc., to pay the aforesaid taxes. The writ was denied. Murphy v. Jos.Hollander, Inc., 131 N.J. Law 165; 34 Atl. Rep. 2d 780.
The prayers of the bill are for the appointment of a receiver, injunction against A. Hollander Son and the other defendants from paying over to the former directors of Jos. Hollander, Inc., or to its stockholders-distributees, any money, funds, or other things of value until the determination of the rights of the complainant; that it may be decreed that the defendants Jos. Hollander, Inc., and the trustees in dissolution "are justly and legally indebted to complainant in the sum of $10,678" for taxes, plus interest and penalties; that the conveyances made as set forth in the bill of complaint be decreed to be a fraud upon creditors, and particularly upon complainant as a tax creditor of said Jos. Hollander, *Page 543 
Inc., and prays for discovery of assets and for accounting.
It is admitted that the city did not proceed according to law to obtain a lien on the delinquents' property for the tax arrearages and that no proceedings were taken under the statute (R.S. 54:4-78-79-82) to enforce the collection thereof which statute provides that the collector shall "* * * forthwith after the date when the last installment of the taxes for such year are due and delinquent, enforce the payment of all taxes on personal property * * * by distress and sale of any of the goods and chattels of the delinquent in the county." The statute also provides for imprisonment but this provision would be of no avail here against this corporation.
The mere ownership by some of the defendants of the real estate in the bill of complaint mentioned, it is contended, does not afford complainant a claim thereon for the reason that the taxes in question are not personal debts of the defendants (Baker v.East Orange, 95 N.J. Law 365; 111 Atl. Rep. 681; affirmed,96 N.J. Law 267; 114 Atl. Rep. 926).
"Generally defined, creditors' suits or bills are bills in equity filed by creditors to enforce the payment of debts out of property of debtors under circumstances which impede or render impossible the collection of the debts by the ordinary process of execution. * * *" 21 Corp. Jur. Sec. 1058.
It is argued by counsel for the defendants that we have consistently held in this state that a tax is not a debt. A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government, upon its citizens or subjects, for the support of the state. It is not founded on contract or agreement. It operatesin invitum. City of Camden v. Allen, 26 N.J. Law 398; Linn v.O'Neil, 55 N.J. Law 58; 25 Atl. Rep. 273; Board of ChosenFreeholders of Atlantic County v. Weymouth, 68 N.J. Law 652;54 Atl. Rep. 458; In re Hazeltine, 119 N.J. Eq. 308;182 Atl. Rep. 357; affirmed, 121 N.J. Eq. 49; 187 Atl. Rep. 177; R.C. Stanhope,Inc., v. North Bergen Township, 129 N.J. Law 513; 29 Atl. Rep.
2d 845.
At the time of the dissolution of Jos. Hollander, Inc., the directors of the corporation were: Joseph Hollander, Katherine *Page 544 
H. Cohen, Bertha H. Solomon (now Steckler) and Lillian Hollander Stubins, and the named persons were also the only stockholders of the company. Following the dissolution of the corporation on November 16th, 1936, it paid certain of its debts and distributed its assets consisting of machinery and equipment and personal property, not including cash, to its stockholders, as a liquidating dividend. It owed Fidelity Union Trust Company $30,050 and other obligations to other creditors. It received $27,500 from Perfection Fur Dressing and Dyeing Co., Inc., as the consideration for the personal property which it sold, and this sum it used to pay the debt due the Fidelity Union Trust Company.
On June 1st, 1938, complainant caused a letter to be sent to Messrs. Ruback and Leber (they represented A. Hollander Son, Inc.), in which the deputy collector said: "Some months ago both Mr. Ruback and Mr. Leber were in to see the undersigned regarding a personal property tax in arrears against Joseph Hollander, Inc., * * * and at that time promised with me to adjust the matter * * *." In that letter the writer said that unless something was done he would be compelled to proceed to collect the arrearages. "I am sending a copy of this letter to A. Hollander Sons whom I understand bought over the business and naturally took over the liabilities." Later, on February 26th, 1942, A. Hollander Son, Inc., wrote a letter to the deputy collector in which they said: "Pursuant to the understanding reached at a conference at your office last week * * * we are sending this letter to you certifying to the facts below stated. On January 2d 1937, we purchased from Joseph Hollander, Katherine H. Cohen, Bertha H. Solomon and Lillian H. Stubins certain machinery theretofore owned by Joseph Hollander, Inc., for which machinery we paid $27,500. We have since the time of that purchase disposed of all of said machinery, most of which we junked, and we do not have, within this state, any of the machinery so purchased. We also entered into an agreement with the same persons, under which we agreed to pay them an annual rental of $15,000 for a plant, said rental to be paid for nine years, we also agreed to pay them an annual royalty of $7,500 for eight years and *Page 545 
$7,000 for the ninth year, for the use of certain formulae, c., making an aggregate payment of $22,500 per year for each year except the last. * * * The net amount which we expect to pay within the next three years as rentals and royalties is the sum of $42,000. You asked our counsel whether we will recognize your levy against these rights and credits. Our answer is that, when made, the levy will be recognized by us to the fullest extent required by law."
On December 26th, 1936, and after the dissolution of Jos. Hollander, Inc., which took place November 16th, 1936, the individual directors, who were also the only stockholders, entered into an agreement with A. Hollander Son, Inc., which agreement contains the following:
"If after January 2, 1937 any tax, assessment, charge, lien orliability shall be finally imposed upon or enforced against the party of the third part herein (A. Hollander Son, Inc.) or its assignee by reason of any matter, thing or act done, caused or suffered to be done or caused prior to January 2, 1937, by anyof the persons constituting the party of the first part, or by the party of the second part, then the amount so imposed upon or charged against the party of the third part or its assignee, may be deducted from the moneys thereafter payable under the aforementioned indenture of lease and/or the aforementioned license and royalty agreement, until such amount shall have been fully repaid to the party of the third part or its assignee." (Italics mine.)
The stockholders-distributees thus authorized the taxes to be paid out of moneys payable under the lease if the tax was "finally imposed upon or enforced" against them. But they knew when they made this agreement that pending the appeals to the County Board of Taxation, the State Board of Taxation and thecertiorari proceedings, they had made it impossible for the city to distrain the personalty for they had disposed of all of the personal property to a bona fide purchaser for value, and that the corporation had been dissolved. Can these defendants now escape payment by insisting as they do that the city is without remedy to collect the tax save by the proceeding provided under the statute for the collection of personal taxes? The answer is in the negative. They are equitably estopped. *Page 546 
"Equitable estoppel in the modern sense arises from theconduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." 3 Pom. Eq. Jur. (5th ed.) 180 §802.
Moreover, it is not true that a municipality is limited in the collection of taxes to the statutory remedy; thus, where there is no adequate remedy for collection, mandamus may be invoked, as in Person, Col. v. Warren Railroad Co., 32 N.J. Law 441, andMcLean v. Delaware, Lackawanna and Western Coal Co., 13 N.J.Mis. R. 83. And equitable relief may also be invoked if a proper basis for it is established, and I am of the opinion that relief should here be granted upon another ground. The stockholders consented to dissolution on November 16th, 1936, but the certificate thereof was not filed with the Secretary of State until May 1st, 1939. In the interim, and while appeals from the assessments were pending, the assets of the corporation were unlawfully distributed to its stockholders.
The steps necessary to effect the dissolution of a corporation are clearly set out by the Court of Errors and Appeals in its decision in In re New Jersey Refrigerating Co., 95 N.J. Eq. 215
(at pp. 219-221). If dissolution is effected by unanimous consent of the stockholders, certain steps may be eliminated that are necessary where dissolution is by only two-thirds in interest voting therefor. But in each instance, the effective act of dissolution is the filing of the certificate with the Secretary of State. Whether dissolution is by two-thirds or unanimous consent, the certificate of dissolution must be published; and, as the court says, "* * * suitable public notice of the fact of dissolution being eminently proper for the benefit of creditors and others having dealings with the corporation * * *." In the instant case, the certificate was not filed until three years after the corporate assets were distributed to the stockholders. Such a distribution in legal *Page 547 
contemplation effects an unlawful dissolution of the corporation.Meyerhoff v. Bankers Securities, Inc., 105 N.J. Eq. 76;147 Atl. Rep. 105. Even if the statutory form of dissolution is followed, a corporation cannot voluntarily dissolve without making reasonable provision for the payment of claims against it, even though such claims are contingent. Failure to make such provision "is an irreparable injury which equity will protect against." U.S. Industrial Alcohol Co. v. Distilling Company ofAmerica, 89 N.J. Eq. 177; 104 Atl. Rep. 216. Had the corporation filed the certificate of dissolution and the same been published as required by law, the municipality would have had an opportunity to file a claim with the directors, as trustees in dissolution, for payment of the tax, and there is no doubt that in the normal course such tax would have been paid.
In Reinfeld v. Fidelity Union Trust Co., 123 N.J. Eq. 428;198 Atl. Rep. 220; affirmed, 125 N.J. Eq. 347; 5 Atl. Rep.
2d 699, the complainants had sold the sole asset of the corporation and divided the proceeds of the sale among themselves without making provision for payment of a mortgage that encumbered the corporation's property. The court said (at p.431):
"* * * The stockholders, dividing up the company's property, did not intentionally commit a fraud on the Guaranty Company, for the mortgaged property was then worth much more than the amount due on the bond. Liability thereon was remote; the obligors unlikely ever to be called to answer. Nevertheless, the distribution was made in disregard of the statute. * * * If the proper steps for a dissolution had been pursued, the mortgagee would have been notified and could have insisted on a reasonable provision for its protection. * * * Clearly when complainants and their colleagues, without lawful warrant, stripped the principal debtor of its property and made impossible that it should pay the debt, they took its liability as well. * * *"
It is also clear that the right of a claimant against a corporation is the same in the case of voluntary dissolution as it would have been in the case of dissolution through a receivership in the Court of Chancery. In In re Central New *Page 548 Jersey Land, c., Co., 113 N.J. Eq. 332, Vice-Chancellor Bigelow stated (at pp. 333, 334):
"* * * The question is, what disposition shall be made of it? Sections 53 to 60 of the Corporation Act (Comp. Stat. p. 1634), relating to dissolution, are a part of one general plan for winding up the corporation's affairs. Section 58, which directs that any balance remaining after the payment of debts and expenses shall be distributed among the stockholders, applies equally whether distribution is made by the directors as trustees or by a receiver appointed by the court. Camden MortgageGuaranty and Title Co. v. Haines, 110 N.J. Eq. 461. `The fact that this corporation is being wound up by its officers and not under the direction of the court, does not alter the rights of the parties nor change the method of distribution.' McGregor v.Home Insurance Co., 33 N.J. Eq. 181; Putnam v. Slayback,23 Fed. Rep. 2d 406. Upon dissolution of a corporation, the assets become a trust fund and the title of the stockholder becomes an equitable right to a distributive share therein. * * *"
There can be no doubt that if dissolution had taken place in the Court of Chancery the municipality would have had an opportunity to file a claim for the personal property taxes and that such claim would have obtained priority over general creditors and stockholders. The method employed by this corporation and its directors deprived the city of that opportunity.
In Chorpenning v. Yellow Cab Co., 113 N.J. Eq. 389, the corporation sold all of its assets and distributed the purchase price without paying a pending unliquidated tort claim which was then in litigation. The tort claim was reduced to judgment after dissolution was effected. The judgment creditor filed a creditor's bill and was granted relief, the court saying (at p.394):
"* * * It was the plain duty of Mr. Harding or that of the Public Service Cab Company to have settled all claims of creditors, including that of the complainants in this cause, before any distribution to stockholders; the rights of the latter were entirely subservient to those of the creditors. * * *" *Page 549 
And (at p. 397) said: "* * * It would be inequitable to permit a creditor to be deprived of the right to the assets of the judgment debtor by reason of the shifting of property of the debtor as in this case. * * *"
That a trust arises for the purpose of equal distribution is also supported by Fox v. Radel Leather Manufacturing Co.,121 N.J. Eq. 291; 189 Atl. Rep. 366. The only problem, it seems to me, is whether the trust that arises upon dissolution is simply for the benefit of creditors in the common acceptation of the term. I think that in equity the trust is broad enough to cover this tax claim.
Mr. Justice Heher in Murphy v. Jos. Hollander, Inc., supra, said that the tax "has the efficacy of a judgment," and it should also be noted that R.S. 54:4-1 says: "* * * the person so assessed for personal property shall be personally liable for the taxes thereon." While this language may not render a personal property tax a debt, nevertheless, it does impose personal liability upon the taxpayer which is an obligation broad enough to constitute the city as one of the beneficiaries of the trust created upon dissolution.
That a trust for the payment of taxes can be enforced in equity by the taxing authority appears from City of Boston v. Turner,87 N.E. Rep. 634, cited by Mr. Justice Heher in his opinion inMurphy v. Jos. Hollander, Inc., supra. In that case, the trust was created by an instrument for the benefit of creditors, and the trustees under the instrument were required to pay taxes due on the donors' property. The Supreme Judicial Court of Massachusetts had in mind the limitations upon the enforcement and collection of taxes and used language similar to the language used by our court that the statutory remedy must be pursued. Nevertheless, the court permitted the bill to lie on the theory that it was enforcing a trust. I think the same theory applies to the case at bar.
The bill of complaint and its prayers are sufficient to support a decree for the complainant upon the theory that the dissolution of the corporation created a statutory trust under the Corporation Act which imposed upon the directors an obligation to pay the taxes before it made distribution to *Page 550 
stockholders and for discovery of the assets of the defendant corporation in the hands of the directors and stockholders-distributees.
There will be a decree for complainant, the terms of which will be settled upon notice.