MICHAEL YOUNGS, appellant,

v.

THE TRUSTEES FOR THE SUPPORT OF PUBLIC SCHOOLS OF THE STATE OF NEW JERSEY, respondents

1. A covenant by a grantee of mortgaged premises to assume and pay the mortgage debt contained in his deed of conveyance, is a contract with his grantor, only for the indemnity of the latter, and may be released and discharged by him.

2. After a release by the grantor of the covenant to assume and pay the mortgage debt, if before bill filed, the mortgagee cannot have the benefit of the grantee's contract of assumption, to found on it a decree against the latter for a deficiency, unless, before the release was executed, the mortgagee had acquired an equitable right in the contract, or the release be impeached as being made in fraud of creditors.

3. A voluntary release, by the grantor, of the covenant to assume and pay.&c., made without consideration, in anticipation of bill filed, and for the express purpose of releasing the grantee from liability for deficiency, will not, for that reason, be invalid; *secus*, if the grantor be insolvent, and the effect of the release is to hinder or defraud creditors by depriving them of the means which the debtor had in his power to make available for the payment of debts.

4. A party who has assumed responsibility for a mortgage debt, either as mortgagor or by a subsequent assumption of liability, and has conveyed the mortgaged premises, taking from his grantee a covenant to pay the mortgage debt, has no more right to divest himself, by a voluntary release of the covenant of indemnity against his liability for the mortgage debt, than he would have to surrender, without consideration, a covenant against encumbrances, or a promissory note, or to give up property or rights of any other description which might be made available in satisfaction of debts. But this disability to release arises only on the happening of insolvency, and when creditors are

Youngs v. Trustees of Public Schools.

thereby hindered or deprived of the means of collecting their demands.

5. On a bill filed for the foreclosure of a mortgage, praying a decree against a grantee of the mortgaged premises for deficiency, if the covenant to assume has been released, and the mortgagee seeks to avoid the release for fraud, the bill should be framed in that aspect, and make an issue on the fraud.

6. Where there are successive grantees of the mortgaged premises, each assuming payment of the mortgage debt, the decree for deficiency should determine and adjudge the order of the liability of the several grantees, especially where matters occurring between the parties may require a marshalling of securities.

On appeal from a decree of the chancellor, whose opinion is reported in *Trustees for the Support of Public Schools* v. *Anderson, 3 Stew. 366.*

*Mr. C. M. Woodruff* and *Mr. L. Cochran,* for appellant.

I. There are no facts or circumstances in this case to take it out of the principles enunciated by this court, in the case of *Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650.* The important principle decided in that case will appear by the two following quotations from the opinion of the court:

" The mortgagee, being the representative of, and standing in the place of, the mortgagor, to enforce the rights of the latter against the purchaser, and having no greater or other equity in himself, is entitled to such remedy only as the mortgagor himself had against the purchaser when the bill was filed. In other words, being a stranger to the contract of the purchaser with the mortgagor, and to the consideration whereon it was founded, it will be competent for those who are parties to it to rescind and extinguish it at their pleasure, and, after such rescission and extinguishment, the contract becomes utterly incapable of enforcement."

" The obstacle in the way of a recovery by the mortgagee * * * is fundamental, where the agreement is cancelled and discharged by the parties to it. He has no contract

with the grantee of the mortgagor; his equity is only to stand in the place of the mortgagor, to be substituted in his place to a remedy which the mortgagor might have if he paid the mortgage debt."

II. The evidence in this case shows that the appellant improved the mortgaged premises and increased their value whilst he owned them, and that he had no dealings with the mortgagees, except to pay them interest, during the time he was the owner of the premises. There is no evidence of promises made by him to the mortgagees or their agents, by which their action was in any respect influenced, or that they were induced, by any act done or statement made by him, to postpone the collection of their mortgage, or to do or omit to do any act in relation to their mortgage. It can not, therefore, be pretended that the appellees have any independent equity to have their mortgage paid by the appellant.

III. It cannot be denied that parties to such a contract may, by voluntary release, such as that in this case, rescind and extinguish it, if the release is not intended to defraud, or does not defraud, any person whose legal status is such as to entitle him to question it. Was the legal status of the appellees such as to entitle them to question either the consideration or good faith of this release? No independent equity to have their mortgage paid by the appellant having arisen in their favor, the contract being such an one as this court, in the *Crowell Case,* declared the parties may rescind or extinguish at pleasure, the appellees cannot question the consideration of such release, and it could not have been *mala fides* as to them.

IV. If the last point is not well taken, it is clear that the good faith of such a release can only be questioned by the mortgagees (there being no independent equity) to the extent of inquiring whether the contract was actually extinguished, and intended so to be, by the parties—whether the release was a real or a sham one. If it was actually irrevo-

cably made and intended, by the parties to it, to operate as a release and discharge of the covenant; if the contract was in truth extinguished as between the parties to it; if there was no separate agreement or understanding in regard to the release, to change or modify in any manner its terms, the contract is then actually extinguished, and is " utterly incapable of enforcement." The mortgagee can not, when the contract is thus extinguished, be entitled to decree for deficiency, based upon such contract, because " his equity is only to stand in the place of the mortgagor, to be substituted in his place to a remedy which the mortgagor might have if he paid the mortgage debt," and it is not pretended that the contract in this case was not, in good faith, released and extinguished by the parties to it.

V. The chancellor, in his opinion, says: "That the releases were executed and delivered merely in view of this suit, and for the purpose of preventing the complainants from having recourse, in equity, to Youngs, is proved, and, indeed, admitted." And, again: " It is conceded that it would have been too late to discharge or affect the equity under consideration as against the mortgagees *in invitum*, by agreement between the mortgagor and his grantee after suit had been actually commenced; and this case is within that principle." It is respectfully submitted, that the case does not support either of these views of the chancellor. It is not, and was not, admitted, that the releases were procured in view of *this* suit, and this case is not within the principle that it would have been too late to discharge or affect the equity under consideration as against the mortgagees *in invitum*, by agreement between the mortgagor and his grantee after suit had been actually commenced.

VI. The rule by which grantees are held for deficiency, particularly intermediate grantees, is a harsh one, and, in many cases, works great injustice. A grantee who has conveyed the premises, having assumed the mortgage in the deed to him, and having taken from his grantee a

covenant of assumption, has no control over the mortgagee, and can not, in any manner, influence his action in relation to the mortgage or the mortgaged premises. The mortgagee may, if he chooses, permit waste and destruction of the mortgaged premises; he may neglect or refuse to enforce the collection of his mortgage, and the grantee, who has assumed the payment of the mortgage debt, and in good faith conveyed the premises to another, has no means of protecting himself. In the opinion of the vice-chancellor, in the *Crowell Case, 12 C. E. Gr. 152,* he says: "The complainant became the owner of the mortgage (in that case the complainant was an assignee) before the covenant of the hospital was made; he did not ·purchase, relying upon it as a part of the security, nor does it appear that his conduct has since been, in the slightest degree, influenced by it." So, in this case, the appellees loaned their money before the covenant of the appellant was made, and, in loaning it, did not, of course, rely upon his covenant as a part of their security, nor does it appear that their conduct has been in the slightest degree influenced by it. Under these circumstances, a court of equity is called upon to declare whether, in case there shall be a deficiency, the appellant, who, unquestionably, procured from his grantor, before the bill was filed, a release of his covenant, which is valid as between the parties, and who is in nowise to blame for such deficiency as there may be, shall be made to pay it to the appellees, or whether they shall lose it; and it is respectfully submitted that equity demands that such loss as there may be shall fall upon the appellees, and not upon the appellant, and that the decree of the chancellor for deficiency against the appellant shall be reversed.

*Mr. John P. Stockton, attorney-general,* for respondents.

It is proposed to discuss the question raised in this case under the following heads, viz.:

I. Where one purchases land and assumes in his deed to pay off a bond and mortgage of his grantor, to which

such land is subject, he thereby becomes a surety in respect to the mortgage debt. This obligation of the purchaser to pay the debt inures, in equity, to the benefit of the mortgagee, and he may enforce it against the purchaser to the extent of the deficiency, on a bill to foreclose.

II. A release from such assumption, executed by the grantor without a valuable consideration, after notice from the mortgagee that he looked to the grantee for the deficiency, admitted to have been executed for the express purpose of depriving the mortgagee of such collateral security, is fraudulent and void.

The whole evidence shows a combination between John Anderson, who borrowed the money, and the subsequent grantees, to defraud the trustees of the school fund out of the deficiency, if any there should be, and that the release was executed for this express purpose, under the advice of counsel that, under a recent case, such a result could be accomplished. It is respectfully submitted that this is but an attempt to use the court of chancery as an instrument to perpetrate a fraud upon the school fund.

The only point raised in this case is, whether the releases signed and executed by John Anderson to Benjamin Anderson, Jr., and Benjamin Anderson, Jr. to Hiram Ackerson, and Hiram Ackerson to Michael Youngs, had the effect to relieve Benjamin Anderson, Jr., Hiram Ackerson and Michael Youngs from the liability which they assumed by accepting the deeds.

I. The first point we have made is well settled in this state, that "where one purchases land, and assumes in his deed to pay off a bond and mortgage of the grantor, to which such land is subject, he thereby becomes a surety in respect to the mortgage debt, which inures in equity to the benefit of the mortgagee, and he may enforce it against the purchaser to the extent of the deficiency, on a bill to forclose." *Klapworth* v. *Dressler, 2 Beas. 62.*

II. A release from such assumption, executed by the grantor without a valuable consideration, after notice from

the mortgagee that he looked to the grantee for the deficiency, admitted to have been executed for the express purpose of depriving the mortgagee of such collateral security, is fraudulent and void.

It may be insisted, on the authority of *Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650*, that the contract was extinguished by the releases executed before the complainant's bill was filed, but it will be observed that, in the case referred to, there was a *reconveyance of the property for a valuable consideration*, and *its fairness was not called in question*.

In the case now submitted, it appears that three of the defendants (and especially Michael Youngs), after being apprised that the complainants looked to them, or one of them, for any deficiency, for the purpose of avoiding the responsibility and without altering or changing their contract with the grantors, procured from them respectively, the releases, *without consideration*, which Michael Youngs admits were executed for the express purpose of defeating the claim of the school fund for the deficiency. This was simply a fraud; the release was invalid. The mortgagee is subrogated to the rights of the grantors. It was no change of contract between the parties to it which, under the decision of *Crowell* v. *Hospital of St. Barnabas,* might have prevented the mortgagee from availing himself of the collateral security, but it was simply designed to defeat the equitable right which was admitted to exist, without changing the status of the parties in reference to one another. It resembles the case of *Monmouth Ins. Co.* v. *Hutchinson, 6 C. E. Gr. 107*, where a party who had suffered loss by fire, gave a release to a railroad company which had compromised with them for a portion of the loss, having previously received the amount of insurance from the insurance company. It was held that the release between the insured and the railroad company was a fraud on the insurance company, and, as such, was invalid; that the insurance company was subrogated to the rights of the insured as against the railroad company, notwithstanding the release.

If a deed is executed with an intent to delay creditors, the intention will make the deed fraudulent. *Knight* v. *Packer, 1 Beas. 214.*

If a deed be made without consideration and in bad faith, it is void as against creditors. *Sayer* v. *Fredericks, 1 C. E. Gr. 205 ; 1 Story Eq. Jur. 353.*

"Although a purchaser pay full consideration and have no notice that the property is transferred to defraud creditors, yet, if the circumstances are such that he must have *inferred* that such was the object, the sale will be set aside as against a creditor." *Green* v. *Tantum, 4 C. E. Gr. 574, 6 C. E. Gr. 364.*

"A voluntary conveyance, without any other consideration than natural affection, made at the time he is indebted, is fraudulent as against creditors." *Lockyer* v. *De Hart, 1 Hal. 450.*

"The existence of fraud is often a presumption of law from admitted or established facts, irrespective of motive, and too strong to be rebutted." *Reford* v. *Crane, 1 C. E. Gr. 265.*

The complainants' right to have their obligation paid by the grantees inured upon the acceptance of the deeds by the respective grantees; therefore, it would seem that any contrivance or combination, between the grantees and grantors, to defeat or deprive the mortgagee of the benefit of any equity which had accrued *after notice* that the mortgagee relied upon such equity or security for the payment of his debt, is a fraud.

The opinion of the court was delivered by

DEPUE, J.

The complainants' bill was filed to foreclose a mortgage for $9,000, made by John Anderson, dated August 12th, 1871, and payable one year after date. The mortgagor, on the 26th of August, 1871, conveyed the mortgaged premises to Benjamin Anderson, Jr. On April 1st, 1873, Benjamin

Anderson, Jr. conveyed to Hiram Ackerson. On the 9th of February, 1874, Ackerson conveyed to Michael Youngs, the appellant, who, on the 16th of March, 1875, conveyed to Benjamin A. Anderson. Each of the above-mentioned conveyances was made by a deed containing an assumption by the grantee of the mortgage debt, the same having been deducted from the purchase-money. The bill was filed June 1st, 1877 for the foreclosure and sale of the mortgaged premises. It averred the subsequent conveyances of the mortgaged premises, and set out the assumptions by the several grantees of the mortgage debt, and contained a special prayer for deficiency against the defendants, Benjamin Anderson, Jr., Hiram Ackerson, Michael Youngs and Benjamin A. Anderson, but not against John Anderson. The appellant, Michael Youngs, and the defendants, Hiram Ackerson and Benjamin Anderson, Jr., answered. John Anderson, the mortgagor, and Benjamin A. Anderson, the then owner of the mortgaged premises, did not answer.

Before bill filed, and in anticipation thereof, releases, under seal and for a nominal consideration, were executed by John Anderson to Benjamin Anderson, Jr., by Benjamin Anderson, Jr. to Hiram Ackerson, and by Hiram Ackerson to Michael Youngs, releasing and discharging the said grantees, respectively, from the obligation arising from the assumption of the mortgage debts. The chancellor refused to give effect to the said releases, and made a decree for deficiency against all of the said grantees. From that decree Michael Youngs has appealed.

In *Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650,* the nature and effect of a stipulation in a deed of conveyance of mortgaged premises, that the grantee should assume and pay the mortgage debt, were adjudged by this court. It was held that such a stipulation was not a contract with the mortgagee, or for his benefit, but was simply a contract with the grantor, for his indemnity, and that the right of the mortgagee to a decree against the grantee for

deficiency, did not result from any fixed or vested right of the mortgagee, arising either from an acceptance by the grantee of a conveyance of the mortgaged premises, or from his obligation to pay the mortgage debt as between him and his grantor, but vested on the doctrine of courts of equity, that a creditor may have the benefit of all collateral obligations which one standing in the situation of a surety for others holds for his indemnity, and may proceed directly against the person ultimately liable, in order to avoid circuity of action.   It was also held that, where the mortgagee has acquired no independent equity arising from the dealings between him and the subsequent grantee of the mortgaged premises, and stands exclusively on the engagement of the grantee with his grantor to assume and pay the mortgage debt, he cannot have the benefit of that contract if it has, before bill filed, been released and discharged in good faith by those who were the parties to it.

On a conveyance of mortgaged premises subject to the mortgage, the mortgaged premises become, as between the parties to the conveyance, the primary fund for the payment of the debt, and the grantor, if personally liable for its payment, is considered as a mere surety.  *Klapworth* v. *Dressler, 2 Beas. 62; Hoy* v. *Bramhall, 4 C. E. Gr. 563.* If there be added a personal undertaking by the grantee to pay the debt, his undertaking is a contract with the grantor only, for his indemnity.   Thereupon the distinction arises between a trust created for the better securing of the debt, and a contract simply to indemnify a surety against his collateral liability.   Where a trust is created for better securing the debt, it attaches to the debt, and inures immediately to the benefit of the creditor, and will subsist until the debt be paid.   Such a trust, as a general rule, cannot be extinguished or discharged without the concurrence of all parties in interest.   But where a collateral obligation is given, or a trust is created, merely for the indemnity of the surety, and for his protection and benefit only, it may be released and discharged by him as the only person interested in it,

and his release, as a general rule, will operate as a complete extinguishment, unless, in the meantime, some equitable right in it has arisen in favor of third persons. *Hosmer* v. *Savings Bank*, 7 *Conn.* 478; Thrall v. Spencer, 16 Conn. 139; Jones v. Quinnipiac Bank, 29 Conn. 25; Dempsey v. Bush, 18 Ohio St. 37; Trusdell v. Price, 2 Stew. 624; Deering v. Earl of Winchelsea, 1 Lead. Cas. in Eq. 175, Am. note.

The complainants have not acquired any equitable right in the contract of assumption made by Youngs, arising from their dealings with him. They did not take the mortgage on the faith of his personal responsibility for the debt. He paid the interest on the mortgage debt as it accrued, and there is no proof that he impaired the value of the mortgaged premises during his ownership. On the contrary, the evidence is, that he made improvements on the property, and that it was in good condition when he parted with the title. Nor is there any allegation or proof that the complainants, relying on his assumption of the mortgage debt, were induced, by his conduct or procurement, to alter their situation or forego any of their rights under the mortgage security.

The release of Youngs by Ackerson, his grantor, was executed and delivered before bill filed. When these proceedings were commenced, there was no subsisting right of Ackerson to be indemnified by Youngs against his liability for the mortgage debt, to which the complainants could be subrogated as the representatives of Ackerson. The contract to that effect had been released and discharged by those who were parties to it. That discharge must be equally efficacious to extinguish the complainants' equitable right of subrogation, unless its legal effect can be overcome on some known legal or equitable ground for invalidating, as to third persons, a contract which is valid as between the parties to it. The complainants (respondents) contend that this release originated in a fraudulent intent, and was executed for a fraudulent purpose. If they succeed in hold-

ing that part of the decree appealed from, it must be upon this ground.

The release was executed after the appellant was notified by the attorney-general that the mortgage was in his hands for collection. It was given for a nominal consideration, and was one of the three releases executed with a view to discharge the three grantees of the mortgaged premises from personal liability for the mortgage debt. The appellant admits that his object in procuring the release was to get clear of personal liability for a deficiency, and to throw it on the present owner of the property. But these facts, standing alone, do not make out a case of fraud. The contract of the appellant was with Ackerson, and whether the latter retained or surrendered his contract of indemnity was a matter for his consideration only, and third persons, though they might, as to him, occupy the relation of creditors, cannot complain of the exercise of his volition on the subject (unless the transaction was illegal) as being in fraud of creditors. *Hosmer* v. *Savings Bank, 7 Conn. 478; Lewis* v. *De Forest, 20 Conn. 440; Jones* v. *Quinnipiac Bank, 29 Conn. 25.*

If a mortgagor or a subsequent grantee of mortgaged premises has taken from his grantee a covenant for the payment of the mortgage debt, and has become insolvent, his release and discharge of such a right of indemnity, without consideration, to the prejudice of the mortgage creditor, would plainly be in violation of the statute of frauds, and void as being in fraud of creditors. A party who has incurred responsibility for the payment of a mortgage debt, either as a mortgagor or by a subsequent assumption of liability, and has conveyed the mortgaged premises, taking a covenant from his grantee for the payment of the mortgage debt, would have no more right, in case of his insolvency, to divest himself, by a voluntary release, of the covenant of indemnity against his liability for the mortgage debt, to the prejudice of the mortgage creditor, than he would have to surrender, without consideration, a covenant against encumbrances or a promissory note, or to give up property or

rights of any other description which might be made available, in satisfaction of debts. But this disability of one to do with his own as he pleases, arises only on the happening of insolvency, and when creditors are thereby hindered or deprived of the means of collecting their demands.

In the present case, it appears that John Anderson, the mortgagor, at the time of making his release to Benjamin Anderson, Jr., his grantee, was, and still is, a man of no property, and irresponsible for his debts. For this reason the decree very properly denied effect to his release. But, with respect to the financial ability of Benjamin Anderson, Jr. and Hiram Ackerson, under whose release the appellant derived his discharge, there is no evidence, except that Ackerson owns a farm, and did so when his deed of release was executed and delivered. So far as concerns those two relessors, there is no evidence on which to impugn the validity of their releases. It is true that the release of Ackerson to Youngs was made without any actual consideration. It is also true that a voluntary conveyance by a debtor is void as to existing creditors. But creditors cannot invoke the benefit of the principle unless they are, in fact, hindered or delayed, and the burden of showing such a condition of affairs rests upon the creditor.

It may also be remarked, that the bill of complaint is not framed with the view of raising the question whether these releases were not void as being in fraud of creditors. The bill alleges merely the subsequent conveyances of the mortgaged premises, and the assumption of the mortgage debt thereupon by each of the successive grantees, and, upon these facts, asks a decree against them for deficiency. The bill presents simply a claim, by the complainants, of a right of subrogation which did not exist unless the releases which operated to extinguish that right could be overthrown for fraud. If the complainants intended to rely on fraud as a ground to avoid the releases, so far as their rights were concerned, the bill should have been so drawn as to make an issue upon the fraud.

It may also be remarked that, where there are successive grantees of mortgaged premises, each assuming payment of the mortgage debt, the decree for a deficiency should determine and adjudge the order of the liability of the several grantees, especially where matters occurring between the parties may require a marshalling of securities. As a general rule, where there are successive transfers of the mortgaged premises, with an assumption of the mortgage debt, it will, as between the successive grantees, be cast upon them in the inverse order of the conveyances. But where the intermediate grantees have executed releases to each other, the liability of the parties may be in a different order, even where the releases may be impeached for fraud upon creditors. A voluntary conveyance or release, though it be void as to creditors, is valid as between the parties to it.

On the case, as it is presented, the appellant is entitled to have a reversal of the decree so far as it affects him personally. The reversal will be without costs, the complainants being representatives of the state in this litigation.

Decree unanimously reversed.