The question is whether complainants' mortgage or the mortgage of the defendant Seugling is the prior lien. Both *Page 61 
were made by David Hawthorne; the complainants' on July 1st, 1927, but not recorded until October 10th, 1927; Seugling's dated and acknowledged October 3d 1927, and recorded the next day. If Seugling took his mortgage with notice of complainants' mortgage, the latter has priority; otherwise not. There is evidence which raises a suspicion, at least, that Seugling had actual knowledge of the existence of complainants' mortgage, but I need not decide whether such knowledge was proved since complainants' case is based on a different theory, namely, that August M. Basile, an attorney-at-law, was the agent of Seugling in this transaction and that Basile had knowledge of complainants' mortgage and that his knowledge is imputed to Seugling.
Basile drew the bond and mortgage from Hawthorne to Seugling; they were executed and delivered at his office; he took the acknowledgment of the mortgage. The only other person present at the time was Seugling. Although Basile was primarily Hawthorne's lawyer, he acted on this occasion for both parties. Seugling testified that he had Basile search the title and that Basile made an oral report to him that there were no liens on the property. He instructed Basile to record the mortgage and Basile did so, and later returned it to Seugling. It is clear in my mind that Seugling reposed confidence in Basile and relied on him to see that the bond and mortgage were in proper form and that the mortgage was a first encumbrance on the property. Seugling did not pay Basile for his services but this is not significant. The borrower generally pays all expenses incident to the loan. The situation was the rather common one which is discussed in LeNeve v. Le Neve, Amb. 436; 2 White Tudor (4th Am. Ed. 134
— [*]35). Basile was Seugling's agent.
Now Basile also had drawn complainants' mortgage and had attended to its execution on July 1st, 1927, three months before the execution of Seugling's mortgage. He lodged it with the county clerk for record on October 10th. There is a conflict in the testimony as to whether he had it in his possession when Seugling's mortgage was executed; but he certainly had it then in mind. At that time, Hawthorne *Page 62 
stated that he was going to use part of the money to be loaned by Seugling for the purpose of paying a debt of $1,000 to complainants. This was the amount of their mortgage. A day or so later, Basile called on complainants to arrange for the cancellation of their mortgage but as he offered the principal sum only and demanded that they relinquish the three months' interest which had accrued, they declined to accept his offer.
The question remains whether Basile's knowledge of complainants' mortgage is chargeable upon Seugling, his principal. In Sooy v. State, 41 N.J. Law 394, Mr. Justice Dixon, speaking for the court of errors and appeals, discussed two conflicting rules, each supported by some judicial authority: "That the notice must come to the agent while he is concerned for the principal and in the course of the same transaction and if he have notice only by some other transaction foreign to the business in hand, this will not affect the principal." On the other hand, "that if it appear that notice given to the agent prior to his agency or in another transaction, is in the mind of the agent while acting for the principal and is such as the agent is at liberty to communicate to the principal, the latter will be bound by it." Neither of these standards was adopted by the court, but a third, namely, "that whenever the principal if acting in the matter for himself would have received the notice, the knowledge of his agent shall be chargeable to him." This rule was repeated and applied in Vulcan Detinning Co. v. AmericanCan Co., 72 N.J. Eq. 387, 401. In that case, the court considered what inquiries the principal would have made if acting for itself or through some other agent who had no prior knowledge of the situation and they found that in the ordinary course of events, the new agent would have been led to the same facts already known to the old and hence they concluded that the principal was bound by its agent's knowledge even though that knowledge had not been acquired while he was concerned for the principal or in the course of the same transaction. *Page 63 
The rule of the Sooy Case was again affirmed by the court of errors and appeals in Borough of Deal v. Sieling,102 N.J. Law 585. In Hanford v. Duchastel, 87 N.J. Law 205, the same court enforced the first rule above quoted, namely, that the information, to affect the principal, must be obtained by the agent while he is acting as agent. I think, however, that the settled law of this state is that laid down in the other three cases cited.
Would Seugling, if he had employed an independent lawyer in relation to his mortgage, have learned of the existence of complainants' mortgage? I find that he would. It is the almost universal practice of careful attorneys representing a mortgagee, to take an affidavit from the mortgagor specifying the mechanics' liens, judgments, mortgages and other liens against the property or negativing the existence of any. If Seugling had employed another attorney presumably this practice would have been followed and complainants' mortgage would have come to light. There is no reason to suppose that Hawthorne, if inquiry had been made of him, would have denied the existence of the mortgage. He then intended to pay it off; he volunteered the information that he was going to use part of the new mortgage-money to pay complainants. This being so, Basile's knowledge of complainants' mortgage is constructively the knowledge of Seugling. Complainants hold the prior lien. Let there be a decree of foreclosure on their bill and let the counter-claim of Seugling be dismissed. *Page 64