Complainants Joseph Reinfeld and Fred Neiburg sue to enjoin defendant from prosecuting an action at law for a deficiency on a mortgage bond. They present that they are sureties and not the principal debtors; that the term of the bond and mortgage was extended without their consent or knowledge, and that thereby they were released from liability.
The bond bears date March 18th, 1926, but my statement of the facts must begin three years earlier. In 1923, the complainants and two others decided to buy at foreclosure sale property known as 156 Market street, Newark, and to vest title in a corporation to be formed for that purpose and of which they would be the stockholders. They employed a member of the bar, Mr. David N. Popik, to attend to the matter for them. He bid in the land in his own name at the sheriff's sale and in due course received a deed from the sheriff. Immediately, pursuant to direction of his principals, he executed a bond and mortgage dated June 9th, 1923, in favor of Jacobina Neu, to secure $50,000. The same day, Mr. Popik recorded in the county clerk's office the certificate of incorporation of Essex Realty Holdings, Incorporated, and in September, he conveyed the property to that company subject to the Neu mortgage, as well as to a prior mortgage which had not been cut off by the foreclosure. His clients became the sole stockholders.
I now pass to the creation of the bond and mortgage, the immediate subject of the present suit. Toward the end of *Page 430 
1925, Essex Realty Holdings, Incorporated, applied to Fidelity Union Title and Mortgage Guaranty Company for a loan of $225,000 to be secured by a first mortgage on 156 Market street. The Guaranty Company agreed, provided the four individuals interested in the borrowing company would join in the bond. They consented to do so, and the bond and mortgage were executed and the loan made March 18th, 1926. The Guaranty Company disbursed the money, $140,760 to satisfy an old first mortgage on the property, $43,109 to pay off the Neu mortgage, $4,731 for sundry charges in connection with the loan and the balance, $36,400 to the Essex Realty Holdings, Incorporated. Within a day or so, that corporation paid to each of its four stockholders $10,000 or $40,000 in all, of which the principal source was the money just borrowed from the Guaranty Company.
On these facts, complainants argue that they were sureties on the bond given to the Guaranty Company and were known so to be by the Guaranty Company. But defendant replies that the complainants and their two colleagues were the real debtors on the Neu bond which was paid off out of the loan and that they were the actual recipients of the cash turned over to Essex Realty Holdings, Incorporated, and hence that they are principals and not sureties.
Popik had executed the bond to Neu as agent for his four clients. It is not proved that the corporation was then in existence and if it was not, it could not have been his principal. Even though the corporation had been created before the execution of the bond, there is no evidence that the corporation had organized, or authorized Popik to perform any act. So at this stage, the complainants were two of the real debtors. But when the property was conveyed to the corporation in consideration of the issuance of stock, the corporation, under the circumstances of the case, impliedly assumed liability on the bond. Seacoast Railroad Co. v. Hood, 65 N.J. Eq. 530, 538; DuVivier Co. v. Gallics, 149 Fed. Rep. 118; 80 C.C.A. 556. I may add that the Guaranty Company appears to have known nothing of the history of the Neu mortgage. It was merely paying the liens on the *Page 431 
borrower's property in accordance with the understanding on which it was making the loan.
Although $36,400 of the Guaranty Company loan was very shortly distributed by Essex Realty Holdings, Incorporated, among the four stockholders, the presumption is that they received it as a dividend, and not that they took it as money borrowed by them individually from the Guaranty Company. The individuals joined in the bond to the Guaranty Company only because of the insistence of that company that they do so. All the money loaned was used to pay off liens on the property of the borrower or else was paid directly to the borrower. The four individuals, in equity, were sureties on the bond to the Guaranty Company and this the Guaranty Company knew. Burack v. Mayers, 121 N.J. Eq. 135;122 N.J. Eq. 5.
On June 29th, 1926, Essex Realty Holdings, Incorporated, conveyed the premises to Harry Kalisch for a consideration which included payment to it of $138,983. As 156 Market street had been the only asset of the corporation, the transfer left it without property other than cash on hand. It immediately distributed among its stockholders the money, except enough apparently to meet outstanding bills, and in March following distributed the balance still remaining, $420 to each stockholder. Thus the four stockholders, although well aware of the corporation's debt to the Guaranty Company, divided all its assets among themselves and left it an empty shell. They did not take the statutory steps to dissolve the corporation but permitted it to drift until, because of failure to pay the state tax for 1926, its charter was revoked by proclamation of the governor, January 7th, 1929. P.L. 1929 p.874.
The stockholders, dividing up the company's property, did not intentionally commit a fraud on the Guaranty Company, for the mortgaged property was then worth much more than the amount due on the bond. Liability thereon was remote; the obligors unlikely ever to be called to answer. Nevertheless, the distribution was made in disregard of the statute. Meyerhoff v. BankersSecurities, Inc., 105 N.J. Eq. 76. If *Page 432 
the proper steps for a dissolution had been pursued, the mortgagee would have been notified and could have insisted on a reasonable provision for its protection. United StatesIndustrial Alcohol Co. v. Distilling Co., 89 N.J. Eq. 177.
Clearly when complainants and their colleagues, without lawful warrant, stripped the principal debtor of its property and made impossible that it should pay the debt, they took its liability as well. They estopped themselves from claiming to be mere sureties; they promoted themselves to the rank of principals.
But complainants advance another equitable defense to the action on the bond.
The conveyance by Essex Realty Holdings, Incorporated, to Harry Kalisch was made pursuant to an agreement, whereby the former agreed to convey the property and the latter agreed to pay and satisfy $370,000 as the consideration, $145,000 in cash and $225,000 "by accepting the premises subject to a mortgage to be held by the Fidelity Union Title and Mortgage Guaranty Company or their nominee." Title passed in accordance with the agreement. On the settlement, Kalisch was charged with the purchase price $370,000 and credited with the amount of the mortgage. The rule applies stated by Mr. Justice Depue in Crowell v. Hospital ofSt. Barnabas, 27 N.J. Eq. 650, 655. "If, by the terms of purchase, the mortgage money is, by agreement, taken as part of the consideration money, equity raises upon the conscience of the purchaser an obligation to indemnify the mortgagor against the mortgage debt."
The Guaranty Company knew of the agreement of sale and demanded and received from Mr. Kalisch a subordination of his rights under the agreement to the Guaranty Company's title under its mortgage. The Guaranty Company also acquired in due time knowledge of the conveyance from Essex Realty Holdings, Incorporated, to Kalisch and that his deed recited, "This conveyance is made expressly subject" to the mortgage under discussion. But the Guaranty Company denies knowledge or notice that the terms of the agreement of sale were actually carried out when title passed and that the mortgage money was taken as a part of the consideration *Page 433 
money. A contract for the sale of land operates, even before the deed is delivered, to vest equitable title in the purchaser. Knowledge of the agreement of sale and of the deed shortly thereafter delivered, was enough to put the Guaranty Company to inquiry. It became chargeable with notice of Kalisch's obligation to Essex Realty Holdings, Incorporation.
Mr. Kalisch, a few days after he took title, conveyed the land to 156 Market Street Company. Then, on May 12th, 1931, the Guaranty Company, for a good consideration, extended the mortgage to April 1st, 1934, without the knowledge or consent of Essex Realty Holdings, Incorporated, or complainants. In 1936, defendant, holding the bond and mortgage by assignment from the Guaranty Company, foreclosed and instituted action on the bond against complainants and others.
The law is well settled that a purchaser of land, who assumes and agrees to pay the mortgage debt, becomes as between himself and vendor, the principal debtor and the vendor becomes his surety; that if the creditor with knowledge of this relationship, extends the term of the mortgage by agreement with the grantee, but without the consent of the surety-mortgagor, he thereby releases the latter. Defendant argues that this rule does not apply in the present instance because the relationship between grantee and grantor under the Crowell Case is not that of principal and surety, but rather indemnitor and indemnitee.
The results of equitable assumption, as defined in the CrowellCase, and of express assumption of the mortgage debt, are much alike. In each case, if the obligor on the bond is required to pay the creditor, he can recover from the grantee. The grantee's obligation is merely one for the indemnity of the grantor and for his protection and benefit only, and may be released by him as the only person interested in it. Youngs v. Trustees, c., ofPublic Schools, 31 N.J. Eq. 290. In the case of a covenant to assume, the creditor may in equity sue the assuming grantee, since "a creditor may have the benefit of all collateral obligations which one standing in the situation of a surety for others *Page 434 
holds for his indemnity, and may proceed directly against the person ultimately liable, in order to avoid circuity of action."Youngs v. Trustees, c., of Public Schools, supra.
Vice-Chancellor Van Fleet, although he dismissed the bill for failure of proof, seems to have believed that the mortgagee can likewise proceed against a grantee who has not expressly assumed the debt but who has kept back from the agreed purchase money the amount of the mortgage. Heid v. Vreeland, 30 N.J. Eq. 591.
Vice-Chancellor Ingersoll in Friedman v. Zuckerman, 104 N.J. Eq. 322,
held the contrary on the authority of Woodbury HeightsLand Co. v. Loudenslager, 60 N.J. Eq. 403. I may add that in the last cited case, I can find nothing to support the decision of Friedman v. Zuckerman.
How slight is the difference between the two kinds of obligation undertaken by a grantee, appears from Thayer ads.Torrey, 37 N.J. Law 339, an action for purchase money due under an agreement of sale. The contract dealt with real estate subject to a mortgage for $2,080 and stipulated that the consideration, $16,080, be paid as follows: "$2,080 in said mortgage," c. The defendant grantee objected that the deed tendered him contained an express assumption of the mortgage. The supreme court held the tender good for what the contract required was "in effect, an assumption to pay the mortgage in discharge of the vendor's liability to pay. Instead of paying him the entire consideration money out of which the mortgage may be paid, so much of the consideration as may be needful is appropriated by the parties for that purpose. The mortgage is charged upon the purchase money and not upon the land only by the agreement, and it is rightly so stated in the deed."
Gorenberg v. Hunt, 107 N.J. Eq. 582, was a case much like the one now before me. The mortgagor had conveyed away the property for an agreed purchase price on which was credited the amount due on the bond and mortgage. Later, the mortgagee extended the mortgage without the knowledge of the mortgagor who claimed he was thereby released, and sued to restrain an action on the bond. He lost his suit but only because the mortgagee had no notice of the retention *Page 435 
of the purchase price. The decision went on the theory that, if the mortgagee had had notice, the extension would have released the mortgagor.
The extension released Essex Realty Holdings, Incorporated, unless the following objection is sound.
Shortly after the Guaranty Company acquired the mortgage, it began to sell participations therein, evidenced by certificates that it had assigned, transferred and set over to the person named and therein termed the assured, an undivided interest to the extent of a stated sum in and to the bond and mortgage. Defendant contends that thereupon the purchasers collectively became owners of the bond and mortgage and the Guaranty Company became their agent for certain purposes relating to the investment; that it had no authority as agent to extend the term of the mortgage and, even if it had such authority, its principals, the owners of the participations, were not bound by its knowledge of the facts which made Kalisch the principal debtor and relegated Essex Realty to the position of surety.
The first point is quickly answered. Each participation certificate contained the clause, "The Company may extend the time of payment of said bond and mortgage without notice to the assured." This was ample authority. True, the certificate further provided that the company should give notice of the extension to the assured, who might thereupon surrender the certificate and receive payment from the company, and that, upon assured's failure for thirty days to surrender the certificate, the assured should be deemed to have consented to such extension. These terms did not limit the authority of the company. They became operative only after the mortgage had been extended. They governed relations between Guaranty Company and participation holders and did not concern other parties.
The general rule which defines the circumstances under which the knowledge of an agent is imputed to his principal, is this: "Whenever the principal, if acting in the matter for himself, would have received the notice, the knowledge of his agent shall be chargeable to him." Reiners v. Hawthorne, *Page 436 109 N.J. Eq. 60, and cases there cited. But I think this rule does not apply. The problem is not simply one of principal and agent. The Guaranty Company, by its certificates, guaranteed to the holders thereof payment of interest at a certain rate as well as the principal sum. It was appointed irrevocably agent of the assured to do, in general, whatever the owner of a bond and mortgage may do in respect to his investment — untrammelled by instructions from the certificate holders. I may take judicial notice of the fact that whoever purchased such certificates relied on the antecedent knowledge which they supposed the issuing company had acquired relating to the value of the property, the title, fire insurance, c. They committed the management of the investment to the Guaranty Company, assuming, of course, that it would be guided by all facts known to it bearing on the investment. Under such circumstances, they are chargeable with its knowledge of the sale to Kalisch.
The participation certificates were not recorded in the books of assignments of mortgages at the county register's office, or otherwise brought to the attention of the owner of the property, or of the parties personally liable for the mortgage debt. It is a well-settled rule, said Vice-Chancellor Stevenson inWeinberger v. Brumberg, 69 N.J. Eq. 669, that "the debtor or party liable on an assigned chose in action is not affected by the assignment until he has notice thereof, and consequently he may set up against the claims of the assignee any defense acquired before notice that would avail him against the assignor, had there been no assignment."
The extension of the mortgage released Essex Realty Holdings, Incorporated, from any claim of the Guaranty Company or of certificate holders, or of defendant who stands in their shoes. What of complainants? They and the Essex Realty Holdings, Incorporated, were jointly and severally bound to the Guaranty Company. A technical release under seal to one of several such obligors discharges the others. Crane's Adm'r v. Alling,15 N.J. Law 423; Line Nelson v. Nelson Smalley,38 N.J. Law 358. A release of one by operation of law springing from the act of the creditor, has the *Page 437 
same effect of releasing the other obligors. Munyan v. French,60 N.J. Law 12. The rule also prevails in equity. Pierson v.Berry (N.J.), 97 Atl. Rep. 275.
Decree for complainants.
Essex Realty Holdings, Incorporated, has filed a separate bill which was consolidated for the purpose of the hearing with the suit of Reinfeld and Nieburg. It likewise may have a decree enjoining prosecution of the action on the bond.