The complainants seek to restrain the defendant trustee from proceeding with an action at law to recover a deficiency arising in mortgage foreclosure proceedings.
The Domestic Investment Company, a corporation of this state (hereafter called the Investment Company), the owner of premises known as No. 169-173 Manhattan avenue, Jersey City, with Hyman Temkin and Joseph Hawkin, on March 24th, 1925, executed a joint and several bond in the penal sum of $150,000, conditioned to pay the principal sum of $75,000 on April 1st, 1928, with interest thereon, to the Fidelity Union Title and Mortgage Guaranty Company (hereafter called the Guaranty Company). To secure the payment of the bond, a mortgage covering the above premises, was executed by the Investment Company to the Guaranty Company. On February 5th, 1926, the Investment Company conveyed the premises to Parlane Realty Company, a corporation of this state (hereafter called the Realty Company), subject to the said mortgage (Exhibit C-1).
On February 27th, 1928, the Guaranty Company and the Realty Company executed an agreement extending the due date of the mortgage from April 1st, 1928, to April 1st, 1931 (ExhibitC-2). Schumann, the complainant, and Morris Albert (now deceased), at the time of the execution of that agreement, signed an extension bond obligating themselves jointly and severally in the penal sum of $138,000, conditioned to pay the remaining balance of $69,000 due on the bond and mortgage (Exhibit C-3).
The Realty Company on September 11th, 1930, agreed with George F. Durr and Martha, his wife (Exhibit C-8) to convey the premises to them at a valuation of $105,000 taking in exchange on account of the purchase price, property owned by the Durrs known as No. 125 Manhattan avenue, with a fixed valuation of $36,000. On September 25th, 1930, by written agreement (Exhibit C-9) between the Realty Company and George F. Durr, the latter agreed to convey the said premises No. 125 Manhattan avenue for the sum of $30,000 in cash. It was provided in the contract to convey that the closing and passing of the title should be simultaneous with *Page 351 
the closing and passing of the title to the premises upon which the Guaranty Company held the aforesaid mortgage.
On October 20th, 1930, the Realty Company conveyed the mortgaged premises, No. 169-173 Manhattan avenue, to the Durrs (Exhibit C-4), for the sum of $99,000, subject to the mortgage of $69,000. After adjustments, incident to the passing of the title, had been made the Realty Company, when the title passed, received in addition to an initial deposit of $1,000, the sum of $24,708.46.
Later, on March 10th, 1931, the Durrs entered into an agreement with the Guaranty Company whereby the balance of $69,000 due under the said bond and mortgage executed by the Investment Company, was extended from April 1st, 1931, to April 1st, 1934 (Exhibit C-5). In consideration of that extension, the Durrs executed to the Guaranty Company their joint and several bond dated March 10th, 1931, whereby they obligated themselves in the penal sum of $138,000, conditioned for the payment of the said sum of $69,000 owing on the bond and mortgage on the extended due date (Exhibit C-6).
The defendant, Fidelity Union Trust Company (hereafter called the Trust Company), on April 1st, 1936, became the assignee of the bond and mortgage of the Investment Company as trustee for the benefit of holders of certain mortgage participation certificates.
On August 27th, 1937, the said Morris Albert died intestate. Letters of administration on his estate were issued by the surrogate of Hudson county on September 9th, 1937, to the complainants Benjamin and Dewey Albert (Exhibit C-7).
The defendant Trust Company, as trustee aforesaid, on October 23d 1937, filed a bill in this court to foreclose the mortgage of which it was the assignee as aforesaid, and on September 15th, 1938, the sheriff of Hudson county sold the mortgaged premises to satisfy the sum of $80,021.28 due on the final decree entered in the cause in favor of the Trust Company as trustee. The Trust Company, as trustee, purchased the premises at the sheriff's sale for the sum of $100. An order confirming the sale was entered September 26th, 1938. On December 6th, 1938, the defendant trustee instituted *Page 352 
an action in the New Jersey supreme court, Essex county, to recover a deficiency of $82,863.92 on the bond executed by the Realty Company and the complainant Max Schumann and Morris Albert, deceased as aforesaid.
The complainants contend: (1) that the extension agreement entered into between the Guaranty Company and George F. and Martha Durr (Exhibit C-5), was not consented to by the signatories to the bond sued upon by the Trust Company as trustee; (2) that on April 1st, 1931, when the said mortgage became due, the mortgaged premises were then worth more than the amount then owing upon the said mortgage, and that between April 1st, 1931, and the commencement of the foreclosure proceedings on October 23d 1937, the premises depreciated in value and became encumbered by default in payment of taxes and interest; (3) that the complainants, Max Schumann and Morris Albert, the intestate, were liable only as sureties for the mortgage debt, and that the said extension agreement entered into between the Guaranty Company and George F. and Martha Durr, without their consent, in effect released and exonerated them from all liability upon the said bond; and (4) that a similar release and exoneration also results from the fact that the mortgaged premises were worth more than the mortgage debt on April 1st, 1931, the due date of the mortgage as extended by the agreement with the Realty Company (Exhibit C-2), and that the premises subsequently and between said date and the commencement of the foreclosure proceedings, depreciated in value, and were permitted to be encumbered by unpaid taxes and interest.
The complainants, to obtain relief, are required to establish: (1) that they are in fact sureties for the payment of the obligation; (2) that the mortgagee had knowledge of such suretyship at the time of the extension; (3) that the extension was given to one principally liable for the payment of the debt; (4) that such extension was made without their knowledge and consent. Gorenberg v. Hunt, 107 N.J. Eq. 582;153 Atl. Rep. 587; DeLotto v. Zipper, 116 N.J. Eq. 344; 173 Atl. Rep. 588;Meyer v. Blacker, 120 N.J. Eq. 35; 184 Atl. Rep. 191; Wittson
v. Englewood Plumbing *Page 353 Supply Co., 121 N.J. Eq. 323; 189 Atl. Rep. 920; Aque v.Dexheimer, 123 N.J. Eq. 133; 196 Atl. Rep. 698. Have the complainants proved their title to relief by establishing the elements necessary in this proceeding? I am not convinced that they have.
The complainants insist that when they signed the extension bond that they became sureties for the original mortgagor, and secondarily liable to the original mortgagor for the mortgage debt. The bond on its face does not support them in their assumed position; it distinctly binds them jointly and severally.
The court of errors and appeals in Gaffney v. Wm. E. Wright Sons Co., 112 N.J. Law 191; 169 Atl. Rep. 816, said:
"Counsel argues that until the plaintiff exhausted his remedy, if any, against the original mortgagor no action would lie on the extension agreement or on the bond contemporaneously executed therewith for the reason that one of the conditions of the bond recites that `if any bondsman aforesaid neglects, c.' From our reading of the entire instruments, and particularly the conditions and covenants, it is manifest that the defendants were primarily liable."
Gaffney v. Wm. E. Wright Sons Co., supra, was relied upon by the court of errors and appeals in its opinion in Chodosh v.Schlesinger, 119 N.J. Law 405; 196 Atl. Rep. 731, when it held that one liable on a bond, similar to the one in the instant case, could not set up in an action thereon that the mortgage security had not been exhausted. The Chodosh Case establishes the fact that the obligor was not a surety for the original bondsman — having been, he would have been enabled to set up the same defenses as were available to his principal.
The court of errors and appeals in both the last cited cases apparently relied upon the covenants and conditions of the bond as well as the extension agreement in order to establish primary liability. The bond in the case under consideration (ExhibitC-3) contains conditions and covenants indicating a direct promise to pay the mortgage debt on the maturity date. Regardless of the complainants' argument that the *Page 354 
cases of Gaffney v. Wm. E. Wright Sons Co. and Chodosh v.Schlesinger are distinguishable from the instant case, and that those cases did not, as here, involve extension bonds but extension agreements only, the defendant places "its finger" upon the weak spot in the complainants' case which, in my opinion, is alone decisive. It directs attention to the testimony in the record that Albert and Schumann were the sole stockholders of the Realty Company (transcript, pages 10, 19); and, as such stockholders, they received the company's sole, or entire, asset, the proceeds that arose from the conveyance, or sale, of the premises to the Durrs. Those proceeds were distributed equally between Albert and Schumann as stockholders. After the distribution of the proceeds the corporation, in effect, was dissolved; it "just died" (transcript, pages 21, 44).
The complainants' action in stripping the corporation of all its assets and distributing them without making provision for the defendant's claim, was contrary to the provisions of the statutes governing corporations, and it, in effect, worked a fraud upon the defendant. The complainants, consequently, were "promoted" to the position of principal debtors with the Realty Company for its liability on the covenants found in the extension agreement.Meyerhoff v. Bankers Securities, Inc., 105 N.J. Eq. 76;147 Atl. Rep. 105; Reinfeld v. Fidelity Union Trust Co., 123 N.J. Eq. 428; 198 Atl. Rep. 220; affirmed, 125 N.J. Eq. 347;5 Atl. Rep. 2d 699.
In the Reinfeld Case, supra, Vice-Chancellor Bigelow said:
"The stockholders, dividing up the company's property, did not intentionally commit a fraud on the Guaranty Company, for the mortgaged property was then worth much more than the amount due on the bond. Liability thereon was remote; the obligors unlikely ever to be called to answer. Nevertheless, the distribution was made in disregard of the statute. Meyerhoff v. BankersSecurities, Inc., 105 N.J. Eq. 76. If the proper steps for a dissolution had been pursued, the mortgagee would have been notified and could have insisted on a reasonable provision for its protection. United States Industrial Alcohol Co. v.Distilling Co., 89 N.J. Eq. *Page 355 176. Clearly, when complainants and their colleagues, without lawful warrant, stripped the principal debtor of its property and made impossible that it should pay the debt, they took its liability as well. They estopped themselves from claiming to be mere sureties; they promoted themselves to the rank of principals."
Although the complainants take the position that primary liability in Gaffney v. Wm. E. Wright Sons Co., supra, andChodosh v. Schlesinger, supra, is based on the extension agreement, they have consequently assumed the primary liability of the erstwhile Realty Company on the extension agreement (Exhibit C-2) by their distribution of its assets.
Notwithstanding the above conclusion, it may be pertinent to remark that the rule has been established in Fidelity UnionTrust Company v. Gottlieb, 125 N.J. Eq. 152; 4 Atl. Rep.
2d 498, that no relation of principal and surety can arise on the execution of a bond similar to Exhibit C-3.
Vice-Chancellor Bigelow in the last cited case said:
"Counter-claimants next say that the bond given by the Gottliebs to the Guaranty Company in 1929 established the Gottliebs as principal debtors with the Kriegers as sureties; that the Guaranty Company, of course, knew of the bond; that the mortgage was again extended in 1932 and thereby were counter-claimants released.
"The relation of principal and surety must arise from some contract or dealings to which both of them are parties. The relation may also be dissolved by them, for instance, by release of the surety to the principal. Feitlinger v. Heller, 112 N.J. Eq. 209; Fisk v. Wuensch, 115 N.J. Eq. 391; Fidelity UnionTrust Co. v. Gerber Brothers Realty Co., Inc., 123 N.J. Eq. 511.
The giving of the bond by the Gottliebs to the Guaranty Company was not a transaction in which the Kriegers participated in any way. The bond was made solely for the benefit of the Guaranty Company, did not raise any equity in favor of the Kriegers, and did not, as to them, make the Gottliebs the principal debtors. Their bond constituted a collateral security for the debt and did not affect the Kriegers' liability in any way. Release of counter-claimants cannot be predicated on the Gottliebs' bond." *Page 356 
So, too, in the instant case, the complainants cannot claim that they became sureties for the original mortgagor on the execution of their bond. As the court said above, the mortgagor did not participate in the transaction; it was for the sole benefit of the mortgagee.
The complainants in their brief lean heavily upon the fact thatExhibit C-3 is a collateral security, and in support of their contention cite not only the Gottlieb Case, but Firemen'sInsurance Co. v. Wilkinson, 35 N.J. Eq. 160. I do not see where the complainants can find either comfort or support of their announced suretyship status in the Gottlieb Case. In theWilkinson Case the term "collateral" can afford them no assistance in view of the opinion of the court of errors and appeals deciding that such bonds create a primary liability even though they may be a collateral security. True, in the GottliebCase the court treated the bond as a collateral security, yet, it held that no surety relationship arose. In the case under consideration, the bond is not collateral to the obligation of the original mortgagor but to the direct covenants to pay found in the extension agreement (Exhibit C-2).
The deed conveying the mortgaged premises to the Durrs recites that it is made subject to the mortgage; but there is no covenant of assumption of the mortgage by the grantees recited (ExhibitC-4). The testimony likewise furnished by the complainants shows that the purchase was made subject to the mortgage (transcript, page 29). Such being the situation, the grantees, the Durrs, did not become personally liable for the mortgage debt, and the complainants consequently cannot claim to have been sureties for them at the time the extension was made (Exhibit C-5).Gorenberg v. Hunt, supra; Reeves v. Cordes, 108 N.J. Eq. 469; 155 Atl. Rep. 547; Meyer v. Blacker, supra.
I believe that the extension was made with the knowledge and assent of the complainants. It must be borne in mind that the consideration for the conveyance of the property in question ran into large figures; it was no small item. A person who invests a sum, such as was here invested, it is fair to assume, would exercise the utmost care and caution in protecting his investment from loss. It is placing no strain *Page 357 
upon the imagination to assume that a person who undertakes to acquire a title to property involving, in round figures, the sum of $100,000 will not lightly regard his investment; he will take all necessary precautions to make his security safe and sound from loss through foreclosure proceedings, or otherwise. One assurance would be by insisting upon a reasonable period of time within which to pay any liens that may stand of record against the title. It is to be remembered that the complainants acquired title to the mortgaged premises in October, 1930; that the defendant's mortgage of $69,000 was at that time a lien against it and was to continue for a period of only six months, until April 1st, 1931. Under the circumstances, six months would not be considered a reasonable length of time for the average purchaser of real estate to pay and satisfy a $69,000 mortgage. And it would not be doing violence to good sense, and to ordinary business judgment, in presuming that the Durrs discussed with the owners, or their agent, an extension of the due date of the mortgage. The Durrs before acquiring the mortgaged premises had ventured into the real estate market and purchased other property. They were not inexperienced participants in real estate deals when they took title from the Realty Company. They were not exactly "trusting to luck." I was not favorably impressed with all of the testimony of George F. Durr. It, in my opinion, does not "square" in many respects with the common principles by which the conduct of mankind is usually governed. He declared that he did not negotiate with the Guaranty Company for an extension; that it had been represented to him by the agent who negotiated the sale, that he, the agent, had made inquiries of the Guaranty Company about an extension of the mortgage and had been assured that an extension would be given. Durr declared that the agent had not been employed by him; and that he had never spoken to Schumann or Albert about the extension (transcript, pages 40, 42). Durr's testimony as to the extension, I am satisfied, is lacking in sincerity.
There is no doubt that the agent who effected the sale of the premises to the Durrs, secured the extension. Schumann testified that part of the proceeds of the sale were paid *Page 358 
out as commissions (transcript, page 44). The commissions, of course, were paid to the agent who brought about the sale. How did the agent who effected the sale have knowledge of the mortgage encumbrance against the property; and that it was held by the Trust Company? Who furnished him with that information? Certainly, no one but the persons interested as owners. Since the owner corporation talked through its representatives, who were Schumann and Albert, who else but they or persons authorized by them, it may logically be presumed, gave the agent such information. Reiners v. Hawthorne, 109 N.J. Eq. 60;156 Atl. Rep. 370.
It is difficult to believe that the agent who had secured the extension agreement did not convey that information to his principals or employers. There is no doubt in my mind that the complainants employed the agent who effected the sale and that they had full knowledge of his actions and conduct in procuring the extension. The knowledge of the agent is imputed to his principals. Durr indicated that before taking title to the mortgaged premises he had been assured that an extension of the mortgage covering the property he contracted to purchase would be procured (transcript, page 41). Most assuredly the act of the agent in obtaining the extension was the act of his principals, the complainants. Meyer v. Blacker, supra.
The complainants contend that the defendant's point that the Realty Company was not dissolved in accordance with the statutes, and that Schumann and Albert distributed the proceeds of sale of the premises, which constituted the remaining assets of the corporation among themselves, is an issue that was not raised in the pleadings; and they say that it now cannot be considered. They are mistaken in their assertion. The court has unquestioned power at, and after, a final hearing to mould the pleadings to conform with the proofs. And I now direct that the pleadings herein be conformed to the proofs submitted as to the alleged dissolution of the Realty Company, and the division of the assets as hereinabove observed. Downs v. Jersey Central Power andLight Co., 115 N.J. Eq. 348; 170 Atl. Rep. 835; AfricanMethodist *Page 359 Episcopal Church v. Conover, 27 N.J. Eq. 157; Conkling v.Conkling, 126 N.J. Eq. 142.
It may be well to consider the claim of the complainants in their second cause of action, wherein they seek exoneration because of alleged depreciation. The complainants' position as I have indicated heretofore, is distinguishable from the principle laid down in Aque v. Dexheimer, supra, and Fidelity UnionTrust Co. v. Gottlieb, supra. So far as I have been able to observe in an examination of the decisions in this state, the claimants to exoneration who received relief as such, were liable on the original bond and mortgage and not on an extension bond.Reeves v. Cordes, supra; Gorenberg v. Hunt, supra;Prudential Insurance Co. v. Rosenthal, 109 N.J. Eq. 386;157 Atl. Rep. 668. As to the liability of the original mortgagor, the land is the primary fund for the payment of the debt. R.S.2:65-2.
In Chodosh v. Schlesinger, supra, the court of errors and appeals, said:
"In Gaffney v. Wm. E. Wright Sons Co., 112 N.J. Law 191, the liability of the defendants was predicated upon an extension agreement of a bond and mortgage executed by them. The agreement contained a covenant that the party, owner of the property, would pay the indebtedness as provided for in the mortgage. The obligation being primary, the plaintiff was not obliged to exhaust his remedy under the mortgage.
 * * * * * * *
"In the present action, the suit being for the breach of the independent primary covenants that the bond and mortgage would be paid at the extension date, there is no reason why a judgment should not have been directed for the plaintiff and the direction of a verdict in favor of the defendant was clear error."
The last quotation makes it clear that the complainants could have been sued on the extension bond without the institution of foreclosure proceedings on the mortgage; and the same quotation likewise makes it clear in the instant case that the land is not the primary fund for the payment of complainants' *Page 360 
debt. Therefore, the value of the land is of no importance in determining their liability. That determination, consequently, answers the contention of the complainants that they suffered injury by the defendant's alleged delay in the foreclosure proceedings.
Under all the circumstances, I feel that the bill should be dismissed, and will so advise.