This is a suit to foreclose a mortgage. The defendant Nutley 
Avondale Realty Company (hereinafter referred to as the Realty Company), Milton M. Unger, Gilbert E. Kynor and Benjamin Yeshlovsky, on May 13th, 1922, executed to the complainant a bond for $13,000 secured by a mortgage covering premises owned by the Realty Company, known by the street numbers 224-226 North Day street, in the city of Orange, Essex county, New Jersey. On June 1st, 1922, the Realty Company conveyed the premises to Samuel H. Ross, subject to the lien of complainant's mortgage. On June 2d 1924, Ross conveyed them to Mitchell Construction Company, *Page 293 
a corporation. The deed to Mitchell Construction Company provides that the grantee assume and pay complainant's mortgage as part of the consideration for the conveyance.
The complainant and the Mitchell Construction Company, sometime in October, 1933, entered into a "recast" agreement, which, in effect, amounted to a modification of the terms of payment of complainant's bond and mortgage.
The defendants, Unger and Kynor, filed an answer and counter-claim, in which they allege in substance: (1) that they executed the bond as sureties and not as principals; (2) that the conveyance from the defendant Realty Company to Ross was pursuant to an agreement whereby Ross deducted from the proceeds of the purchase price the amount due on the mortgage; (3) that in the conveyance from Ross to Mitchell Construction Company the latter deducted from the sale price the amount due on the mortgage and assumed payment of the mortgage. All of which, they assert, the complainant had knowledge. The complainant, they say, without acquainting them by formal or other notice, entered into a written agreement with Mitchell Construction Company to extend the time for the payment of the principal of the bond and mortgage. That act being without their consent, acquiescence, or knowledge, they argue, automatically released them from liability under the bond. They take the position also that the extension agreement constituted a novation, which effected a cancellation of any liability with which they theretofore may have been charged. They further contend they should be exonerated from liability because of complainant's failure to proceed with foreclosure proceedings when defaults in payments arose, charging that the delay caused depreciation in the value of the premises, and an accumulation of tax arrears covering a period of fifteen years, amounting to approximately $9,375.
The Realty Company, by its vice-president, made a formal written application to the complainant for a loan of $15,000. (Exhibit D-1). The complainant's minute book (Exhibit D-2) shows that instead of giving the full amount applied for, it allowed and granted the Realty Company the sum of $13,000 without any conditions. The defendant Gilbert E. *Page 294 
Kynor was president of the defendant Realty Company, Benjamin Yeshlovsky, its vice-president, and Milton M. Unger, its secretary. Their testimony in effect was that when the complainant's bond and mortgage (Exhibits C-1 and C-2) were executed, the attorney representing the complainant at the time, requested them to sign the bond "as a matter of course," because he "liked it done when the association was granting a loan."
The proceeds of the loan were for the sole benefit of the defendant Realty Company. The Realty Company applied the money to the payment of construction work which was being done on the mortgaged premises. The mortgage contained the following recital:
"Whereas, the said NUTLEY AVONDALE REALTY COMPANY, a corporation, is justly indebted to the said party to the second part in the sum of THIRTEEN THOUSAND DOLLARS ($13,000), lawful money of the United States of America, secured to be paid by its certain bond or obligation * * *."
In 50 C.J. 64 ¶ 111, appears the following:
"* * * the creditor may be presumed to know that one person is the principal, where such person has obtained all the benefit of the contract, as by receiving all of the money, or where the contract was entered into on account of a debt due from one person only."
The complainant at the time it granted the mortgage loan, issued to the Realty Company sixty-five shares of its capital stock. The Realty Company thereupon assigned those shares to the complainant as collateral security for the loan. Under the terms of the bond and mortgage the Realty Company was required to pay the principal and interest in monthly installments of $130.
The defendant Kynor testified that he effected, or took part in bringing about the sale of the premises by and from the Realty Company to Samuel H. Ross; that the contract of sale between them provided that the purchaser would assume payment of the mortgage in question; and that at the passing of the title to the premises, Ross received an allowance on the purchase price on account of the mortgage. At the conclusion *Page 295 
of the sale and conveyance to Ross, the defendant Realty Company executed a transfer, or assignment, of its shares of stock in the complainant association to Ross, which transfer, or assignment, is recorded in the books of the complainant association. The defendants Unger and Kynor testified that they notified the complainant's secretary, Walsh, of the conveyance to Ross; that they stated to him the terms thereof; that it was made subject to the complainant's mortgage; and that he, Ross, had received an allowance for the mortgage on the purchase price. Their testimony stands uncontradicted.
The subsequent conveyance from Ross and his wife to Mitchell Construction Company, dated June 2d 1924, contains this recital:
"This conveyance is made expressly subject to the balance due upon two certain building and loan mortgages now resting upon said premises, embracing different portions of the herein described premises, one of said mortgages being in the original sum of $10,000 and the other being in the original sum of $13,000, which the party of the second part assumes and agrees to pay as part of the consideration for this conveyance."
Ross after executing the deed to Mitchell Construction Company, then signed a transfer, or assignment, of the shares of complainant's stock to his grantee. That transfer of stock was noted upon the complainant's books.
In October, 1933, the Mitchell Construction Company applied to, and obtained from the complainant association a "recast" agreement, or a modification of the terms of the mortgage. That agreement among other things provided that the Mitchell Construction Company was to pay monthly installments of $39 as interest, and $40 for taxes. No payment on account of principal was provided to be made during the entire period of the "recast" agreement. The original monthly installment payments seem to have been waived. There is no doubt that the "recast" agreement effected a material change in the method of the payment of the mortgage loan. In my opinion, it bears every indication of having prejudiced the position of the answering and counter-claiming defendants. They had never been consulted about the change in the terms of payment. The complainant never notified *Page 296 
them that it intended to modify the terms of the original obligation by "recasting" the loan; nor did it seek their consent to do so. There is no evidence to show that they ever acquiesced in that agreement. There is, however, testimony that the defendants learned of it sometime in the year 1937. But they did not then, nor thereafter, approve of it.
On March 7th, 1939, the complainant again recast the balance of $7,923.41 due on the mortgage into a direct "reduction mortgage" (Exhibit D-7, page 9). That appears to have been consummated when it entered into a reorganization scheme with another building and loan association.
The evidence in my opinion, clearly points to the fact that the individual defendants who signed the complainant's bond at the time of the loan to the defendant Realty Company, were sureties. In view of the assumption of complainant's mortgage by the subsequent grantees, and, also, the execution of the "recast" agreements, the answering and counter-claiming defendants are released from any obligation under complainant's bond. If it were necessary to give them further relief, they would be entitled also to exoneration for failure to foreclose the mortgage when defaults occurred under the terms of the bond and mortgage.Fidelity Union Trust Co. v. Prudent Investment Corp., 129 N.J. Eq. 255; Schumann v. Fidelity Union Trust Co., 126 N.J. Eq. 349; 8 Atl. Rep. 2d 852; affirmed, 127 N.J. Eq. 249;12 Atl. Rep. 2d 724; Fidelity Union Trust v. Gottlieb,125 N.J. Eq. 152; 4 Atl. Rep. 2d 498; Slatoff v. Theurich,123 N.J. Eq. 593; 199 Atl. Rep. 49; 125 N.J. Eq. 555;5 Atl. Rep. 2d 748; Reinfeld v. Fidelity Union Trust Co.,123 N.J. Eq. 428; 198 Atl. Rep. 220; affirmed, 125 N.J. Eq. 347;5 Atl. Rep. 2d 699; Meyer v. Blacker, 120 N.J. Eq. 35;184 Atl. Rep. 191; Delacroix v. Stanley, 113 N.J. Eq. 121;165 Atl. Rep. 882; Reeves v. Cordes, 108 N.J. Eq. 469;155 Atl. Rep. 547.
The individual answering and counter-claiming defendants are entitled also to a decree enjoining the complainant from prosecuting any subsequent action against them on the bond.
The complainant is entitled to a decree of foreclosure as prayed for. *Page 297